**Gustavo MARRERO, Petitioner,**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**Nos. 92–3174 & 92–3635.**

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1992.

Decided April 6, 1993.

Irving Edelman (argued), Ypsilanti & Edelman, New York City, for petitioner.

Stuart M. Gerson, Asst. Atty. Gen., David J. Kline, Asst. Director, Lisa Dornell (argued), Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, DC, for respondent.

Present: MANSMANN and
HUTCHINSON, Circuit Judges, and
BARTLE, District Judge.*

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

In these consolidated petitions for review, Gustavo Marrero, the petitioner, seeks our review of an immigration judge's *in absentia* order of deportation. The Board of Immigration Appeals ("BIA") dismissed Marrero's appeal and denied his subsequent motion to reopen deportation proceedings. The BIA exercised subject matter jurisdiction pursuant to sections 103 and 242 of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C.A. §§ 1103, 1252 (West 1970 & Supp. 1992); *see* 8 C.F.R. §§ 3.1(b)(2), 242.21 (1992). This Court has jurisdiction to entertain petitions for review of final administrative orders of deportation under section 106(a) of the INA, 8 U.S.C.A. § 1105a(a) (West 1970 & Supp.1992). Respondent, the Immigration and Naturalization Service ("INS"), however, contends that we lack jurisdiction in Marrero's case because he has already been deported.

We hold this Court does have jurisdiction despite the fact that Marrero has been deported, because he sets out a colorable claim that the order of deportation that was entered against him *in absentia* violated his right to due process. Accordingly, respondent's motion to dismiss Marrero's petition for review will therefore be denied. Nevertheless, because Marrero did not file a timely motion to reopen the proceedings in the immigration court, he has failed to exhaust his administrative remedies. Marrero's attempts to reopen proceedings in the BIA on the basis of evidence never presented to the immigration judge are unavailing. The Board has only an appellate function and cannot consider evidence an alien has not properly and timely brought to the attention of the immigration court. Therefore, we will deny Marrero's

petitions for review without reaching the merits of the issues he presents.

## I. *Factual History*

Marrero is a twenty-nine-year old unmarried male, and a native and citizen of the Dominican Republic. He was admitted to the United States as a permanent resident alien on October 23, 1983. He has continuously resided here from then until his deportation on October 25, 1992.

On January 7, 1987, Marrero was arrested and subsequently indicted on five counts of possession of a controlled substance. On July 9, 1987, Marrero pled guilty and was convicted in the Superior Court of New Jersey, Hudson County, on Count Two of the indictment. It charged him with possession of cocaine with the intent to distribute or dispense, in violation of N.J.Stat. Ann. § 24:21-19(a)(1) (West Supp.1992) (repealed 1987 and recodified at §§ 2C:35-5, 2C:35-10 (West Supp.1992)). He was sentenced to a Youth Center as a Youthful Offender pursuant to N.J.Stat.Ann. § 30:4-146 (West 1981) for an indeterminate term not to exceed five years, but he was released after having served less than two years.

## II. *Procedural History*

Before Marrero's release from the Youth Center, the INS issued an Order to Show Cause ("OSC") why Marrero should not be deported. An OSC is the customary means of informing an alien that deportation proceedings have been brought against him. The OSC, dated February 22, 1988, stated that Marrero had been convicted in New Jersey on July 9, 1987, of possession of cocaine with intent to distribute. On this basis, the OSC charged Marrero with deportability under section 241(a)(11) of the INA, 8 U.S.C.A. § 1251(a)(11) (now appearing at 8 U.S.C.A. § 1251(a)(2)(B)(i)), as an alien who has been convicted of a violation of a law or regulation relating to a controlled substance.

---

* Hon. Harvey Bartle, III, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

After issuance of the OSC, which also functions as an arrest warrant, the INS arrested Marrero at the time of his release from the Youth Center. Marrero contends, however, that the OSC was not served on him at the time of his arrest. Brief of Petitioner at 6.

On September 25, 1990, Marrero's deportation hearing took place. The immigration court noted that the hearing was *in absentia*. It then stated that Marrero had received "due notice" to appear at the hearing on that date:

> [D]ue notice was given for the respondent [Marrero] to appear today at a hearing. Notice was given on April 17, 1990, and according to my notes, the attorney was present on that day, although the respondent was not present, but his attorney of record was present on that day and was advised, and he was advised of hearings September 25, 1990, 9:30 a.m. It is now 11:20 a.m. on the same day, that is September 25, 1990. There has been no communication by or on behalf of the respondent. I have before me an Order to Show Cause.

Administrative Record (Admin.Rec.) at 36.

The immigration court then inquired whether the INS had any objection to the introduction into evidence of the OSC, INS Form I–213,[1] the "face sheet" of Marrero's immigrant visa, and Marrero's conviction record. The court determined that deportability had been established by clear, unequivocal, and convincing evidence. Accordingly, it entered an order of deportation to the Dominican Republic based on the charges in the OSC. In the order, the court determined that Marrero was duly notified of the hearing date and place, but failed to appear without just cause.

On October 4, 1990, Marrero filed a timely notice of appeal with the BIA. The sole reason given for appeal was that Marrero's "due process rights were violated when the Immigration judge held his hearing in-absentia despite the fact that respondent appeared, albeit late, to the hearing with a letter from counsel's office explaining inability to appear by counsel and requesting adjournment." Admin.Rec. at 15. Marrero's counsel stated in the notice of appeal that no oral argument was desired and that no separate written brief or statement would be filed.

The BIA dismissed this appeal on February 6, 1992. In its order, the BIA observed that Marrero did not contend that he had failed to receive notice of the hearing. The BIA specifically determined, notwithstanding the letter from his attorney's office, that Marrero was obliged to appear for his hearing before the immigration court at the scheduled time. Finally, the BIA stated that as of the date of its decision, Marrero had not filed a motion to reopen the proceedings in order to show reasonable cause for being absent from his hearing. Accordingly, the BIA dismissed the appeal for lack of merit. Marrero filed a petition for review with this Court on April 2, 1992.

On June 19, 1992, Marrero filed with the BIA a motion to reopen the immigration court's *in absentia* order. With it he submitted an affidavit setting forth his version of the events preceding the September 25 hearing in explanation of his failure to attend that hearing at the scheduled time. Marrero asserts that:

> [He] came to know that there was a hearing scheduled for October 23, 1990, when his sister, who had posted the bond for his release, received a notice from the insurance company directing her to produce Marrero at the hearing. The date of October 23, 1990 was changed to September 25, 1990 and Marrero came to know of this when the insurance company received a new notice, not from the Immigration Court, but from the INS.
>
> Mr. Botshon [Marrero's attorney] was out of town around the period of September 25, 1990, and, not wanting to jeopardize the bond, Marrero appeared at the hearing at 9:00 a.m. to request an adjournment on the ground that his attorney was out of town. The clerk of the Immigration Court directed Marrero to obtain a letter from his attorney's office

---

1. This form, entitled "Record of Deportable Alien," contained biographical information relating to Marrero as well as information concerning his criminal conviction.

confirming that the attorney was out of town.

Marrero obtained the letter which was signed by a paralegal but, while he was away obtaining this letter, his case was called. Due to his absence, Marrero was found deportable *in absentia*. This was about 11:20 a.m. and he did not return until about 1:00 p.m. The letter from his attorney's office was received at 1:46 p.m. and he waited until the close of the Court session which was about 3:00 p.m. He explained to the Trial Attorney and to the Judge that he was delayed and should be given an adjournment based on the letter from his attorney's office.

His request was refused and the *in absentia* finding was left undisturbed. Brief for Petitioner at 8–9 (citations omitted).

In support of this explanation, Marrero relies on the affidavit he submitted with the motion to reopen the proceedings that he filed with the BIA and the letter to which he referred in his initial notice of appeal. That letter was signed by a paralegal in Botshon's office. It requested an adjournment on the ground that Botshon was out of town and, as noted, it bears an immigration court stamp indicating that it was received at 1:46 p.m. on the date of the hearing.

The BIA denied Marrero's motion to reopen on October 14, 1992. After this denial, Marrero filed a second petition for review of the BIA's decision with us and moved to consolidate it with his petition for review of the order of deportation entered *in absentia*. *See* 8 U.S.C.A. § 1105a(a)(6) (West Supp.1992) (review of order under this section shall be consolidated with review of motion to reopen). Thereafter, we asked the parties to submit supplemental materials setting forth their arguments on Marrero's request to reopen. They did so and each addressed the motion to reopen at oral argument. Accordingly, we will grant Marrero's motion to consolidate his peti-

tions and consider both of them in this one opinion.

In the meantime, on June 9, 1992, in a separate proceeding, the INS filed in this Court a notice of intent to deport on grounds that Marrero is an aggravated felon and thus ineligible for an automatic stay of deportation. On June 23, 1992, Marrero filed a motion for a stay of deportation. The INS filed its opposition to that motion on July 2, 1992. On July 6, this Court denied Marrero's motion for an order declaring that he is entitled to an automatic stay, and his alternative request for a discretionary stay. On July 14, 1992, Marrero filed a motion for rehearing or reconsideration *in banc* of this Court's order denying his motion for a stay of deportation. On July 15, 1992, a single judge entered a temporary stay of deportation and the motion for *in banc* consideration was referred to the *in banc* Court. An order entered July 28, 1992 denied rehearing *in banc*. An August 3 order dissolved Marrero's temporary stay of deportation. Marrero was deported on October 28, 1992.[2] On November 6, 1992, the INS filed a motion to dismiss the petitions for review based on lack of jurisdiction because Marrero had been deported.

Marrero contends that his version of the events of September 25, 1990 would show that he had reasonable cause for his failure to timely appear at his deportation hearing, that the events he recites were unknown to the immigration judge when the judge entered the order *in absentia*, and that the BIA's denial of his motion to reopen was, under the circumstances, a violation of due process.

### III. *Analysis*

Marrero presents three issues for review. First, he argues that he cannot properly be classified as an "aggravated felon" under section 101(a)(43) of the INA, 8 U.S.C.A. § 1101(a)(43) (West Supp.1992), because of

---

2. Marrero also had a habeas corpus action pending in the United States District Court for the Southern District of New York. *Marrero v. McElroy*, 92 Civ. 5394 (S.D.N.Y.). This action challenged his detention by the INS. A writ of habeas corpus staying Marrero's deportation in connection with the motion to reopen issued by that court has since been dissolved. *Marrero v. BIA*, 92 Civ. 6178, 1992 WL 245504 (S.D.N.Y. Sept. 9, 1992).

his drug conviction. Second, he maintains that his deportation order was void *ab initio* because he did not have notice of the nature of the deportation charges against him because he was not served with a copy of the OSC. Finally, he asserts that the BIA erred in upholding the immigration judge's entry of an *in absentia* deportation order based on his failure to attend his deportation hearing because of the letter from his attorney requesting a continuance and the circumstances he avers surrounding his efforts to obtain and deliver that letter to the immigration court.

Before we can reach the merits of these issues, we must dispose of two preliminary questions. The first is whether a court of appeals may entertain a petition for review after the petitioner has been deported. The second is whether Marrero exhausted his administrative remedies before filing his petition for review in this Court.

### A. *Post–Deportation Review*

■ Marrero was deported on October 28, 1992. The INS then filed a motion to dismiss his petitions for review based on lack of appellate jurisdiction. In support, the INS cites section 106(c) of the INA, which provides in pertinent part that "[a]n order of deportation ... shall not be reviewed by any court if the alien has ... departed from the United States after the issuance of the order." 8 U.S.C.A. § 1105a(c) (West 1970). Two courts of appeals have held that this plain, unequivocal language prohibits a court of appeals from considering an alien's petition for review once that alien has been deported, regardless of the circumstances of the deportation. *See, e.g., Saadi v. INS*, 912 F.2d 428, 428 (10th Cir.1990); *Quezada v. INS*, 898 F.2d 474, 476 (5th Cir.1990).

The United States Court of Appeals for the Ninth Circuit has taken a different view, holding that the term "departure" in § 1105a(c) is limited to "legally executed departures" when it is the government that effects the alien's departure. *Zepeda–Melendez v. INS*, 741 F.2d 285, 287 (9th Cir. 1984) (quoting *Mendez v. INS*, 563 F.2d 956, 958 (9th Cir.1977)). "Under the *Men-*

*dez* exception, an alien outside the United States may petition for review of his deportation order when his departure was not 'legally executed.'" *Id.* at 288 (citing *Thorsteinsson v. INS*, 724 F.2d 1365, 1367 (9th Cir.) (examining record of deportation hearing to determine whether petitioners were unlawfully deported by being denied effective assistance of counsel), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984); *Estrada–Rosales v. INS*, 645 F.2d 819, 820–21 (9th Cir.1981) (allowing deported petitioner to attack deportation order based on invalid conviction); *United States v. Calderon–Medina*, 591 F.2d 529, 530 n. 4 (9th Cir.1979) (defendant charged with illegal reentry permitted to attack collaterally lawfulness of underlying deportation where he was deported without being allowed to contact his country's embassy)).

One other court of appeals has adopted and followed the *Mendez* exception. *See Juarez v. INS*, 732 F.2d 58, 59–60 (6th Cir.1984) (deportation not an obstacle to alien's pursuit of administrative remedies based on alleged due process violation in deportation order); *see also Joehar v. INS*, 957 F.2d 887, 889 (D.C.Cir.1992) (noting that if any exception exists to "strict rule" that nonresident alien may not seek judicial review of deportation proceeding, it involves allegedly "illegally executed" deportation) (citing *Estrada–Rosales*, 645 F.2d at 820–21; *Mendez*, 563 F.2d at 958).

The United States Court of Appeals for the Fifth Circuit has expressly rejected the *Mendez* exception on grounds that it departs "from the plain meaning of the statute". *Quezada*, 898 F.2d at 476 (citing *Umanzor v. Lambert*, 782 F.2d 1299, 1302–03 (5th Cir.1986)). In *Umanzor* the Court expressed:

[S]erious reservations regarding the "*Mendez*" exception for, if the exception is taken to its logical conclusion, *any* error or procedural defect at any point in the alien's deportation saga ... would render the departure illegal. This being

so, any later *allegation* of procedural error by a deported alien would force the district courts to review the entire matter, despite the express determination that no such reviews should take place. *Id.* (quoting *Umanzor*, 782 F.2d at 1303) (emphasis in original). In *Quezada* the Court concluded that in the Ninth Circuit, " '*Mendez* has become a sinkhole that has swallowed the rule of 1105a(c).' " *Id.* (quoting *Umanzor*, 782 F.2d at 1303 n. 5); *see Saadi*, 912 F.2d at 428 (" 'The statute's command is unequivocal[:]' once petitioner departed the United States via deportation, a deportation order may not be reviewed by 'any court.' ") (quoting *Umanzor*, 782 F.2d at 1303).

This Court has not yet decided to adopt the *Mendez* exception or to follow the strict application theory of *Umanzor*. In *Newton v. INS*, 622 F.2d 1193 (3d Cir.1980), however, counsel for Newton filed a petition for review after Newton had been deported. The INS moved for dismissal on the ground that we lacked jurisdiction under § 1105a(c). Newton's counsel asserted that the deportation was not legally effected because the INS had failed to notify counsel of the order to report for deportation. This Court observed that "[i]f, in fact, the INS failed to do so, there would be force in counsel's contention that Newton's deportation was invalid because of this denial of procedural due process." *Id.* at 1195 (citing *Mendez*, 563 F.2d at 956). We concluded, however, that Newton's original counsel of record, whose appearance had not been withdrawn, had in fact received notice of his deportation, so no due process violation occurred. Accordingly, we dismissed Newton's petition for lack of jurisdiction under § 1105a(c). *Id.*

■ We think the dictum in *Newton* stating that a court of appeals has jurisdiction over a deported alien's claim that he was denied due process is well taken. Section 1105a(c) says only that we lack jurisdiction when the alien has "departed." We are reluctant to substitute the word "deported" when a right so fundamental as due process is at stake. We do not think, however, that a bare allegation of a due process violation is sufficient. Instead, the record should show that the due process claim is at least colorable. Accordingly, we adopt a middle ground and hold that this Court has jurisdiction to review an order of deportation after the alien has been forcibly deported if the record reveals a colorable due process claim. Of the three issues Marrero presents for our review, only two present potential due process claims: (1) Whether the immigration judge erred by failing either to reopen or to continue his deportation proceedings upon his belated arrival for his September 25, 1990 hearing, and (2) whether the INS failed to serve either him or his attorney of record with the OSC informing him of the nature of the charges against him. On the record before us, we hold that Marrero's due process claims are colorable.

Our holding that we have jurisdiction over Marrero's petitions for review does not, however, mean that he is automatically entitled to have this Court consider or decide the merits of his petitions. We cannot reach the merits of his due process claims unless he has exhausted his administrative remedies. We turn, therefore, to the exhaustion issue.

### B. *Exhaustion of Administrative Remedies*

■ Marrero did not file a motion to reopen the proceedings in the immigration court. Instead, he appealed the immigration court's order of deportation directly to the BIA. That appeal was dismissed by an order the BIA entered on February 6, 1992. Marrero then filed a petition for review with this Court on April 2, 1992. On June 19, 1992, Marrero filed with the BIA a motion to reopen the deportation proceedings, and with that motion he set forth, for the first time in detail, by affidavit, his version of what happened in the immigration court on the day set for his hearing. An alien cannot file a motion to reopen in the immigration court once jurisdiction

over the case becomes vested in the BIA. *Sewak v. INS*, 900 F.2d 667, 669 n. 2 (3d Cir.1990) (citing 8 C.F.R. § 242.22 (1989)).

 It is well established that "[a]n order of deportation ... shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C.A. § 1105a(c); *see Sewak*, 900 F.2d at 670 (appellate jurisdiction over petitions to review INS orders depends upon alien's exhaustion of available administrative remedies) (citations omitted). There is a limited exception to the requirement of exhaustion when there is no administrative forum in which an alien could advance a due process claim. Thus, were the BIA the only available forum, failure to exhaust could be excused. That was the situation in *Sewak* where we rejected INS's exhaustion argument, in part, because the BIA did not have jurisdiction to adjudicate constitutional issues. *Sewak*, 900 F.2d at 670 (citing *Alleyne v. INS*, 879 F.2d 1177, 1183–84 (3d Cir.1989); *Vargas v. United States Dep't of Immigration and Naturalization*, 831 F.2d 906, 908 (9th Cir.1987)). Nevertheless,

> [A] petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process. "Due process" is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal.

*Vargas*, 831 F.2d at 908 (quoting *Reid v. Engen*, 765 F.2d 1457, 1461 (9th Cir.1985)); *accord Sewak*, 900 F.2d at 670; *Alleyne*, 879 F.2d at 1184.

Under the statute and INS regulations, however, an alien ordinarily has an opportunity for reconsideration of an order of deportation entered *in absentia*. The relevant statute provides:

> If any alien has been given a reasonable opportunity to be present at a proceeding under this section, and without reasonable cause fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to

a determination in like manner as if the alien was not present.

8 U.S.C.A. § 1252(b) (West Supp.1992). Thus, the statute permits the immigration court to enter orders *in absentia* only if the alien has had "a reasonable opportunity to be present and present his case." INS regulations concerning reopening are available to implement the statute's limitation on *in absentia* orders. They provide, "A motion to reopen shall state the new facts to be proved at the reopened proceeding and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 103.5(a) (1992). Finally, the INS regulations provide that an alien may file a belated motion for reconsideration of an adverse decision or for reopening the proceedings of the immigration court upon the discovery of new facts. *See id.;* 8 C.F.R. §§ 3.2, 242.22 (1992).

Despite any superficial similarity between the two cases, *Sewak* is distinguishable and therefore Marrero's reliance on it is misplaced. In *Sewak*, the petitioner had never received any notice of his deportation hearing and so never had any opportunity to introduce evidence in his favor or cross-examine the witnesses and otherwise attempt to refute the evidence that the INS put before the immigration court in support of deportation. 900 F.2d at 669. Thus, Sewak never had a chance to correct the immigration court's error in ordering his deportation without notice or hearing until after he appealed to the BIA. *Id.* at 670. Sewak did not fail to exhaust his administrative remedies when he appealed to the BIA without first moving to reopen the proceedings before the immigration court because he did not know of the circumstances leading to his failure to receive notice until after he had appealed to the BIA and received the record from the INS. *Id.* at 671. This Court reasoned,

> To hold otherwise would deprive Sewak of a remedy he did not pursue because the due process violation he asserts left him unaware of the circumstances that made it available. Because of Sewak's alleged initial unawareness of the basis upon which he could have sought reopening in the immigration court, we also

conclude that his appeal to the BIA was not a waiver that precludes him from seeking to reopen in the immigration court.

*Id.*

In contrast, Marrero knew of the circumstances that he avers led to his failure to appear on time on the day of his hearing. He and his counsel were aware of the events they assign as the basis for reopening the immigration court's *in absentia* order when they decided to forego a motion to reopen there in favor of an appeal to the BIA.

A motion to reopen based on new evidence will not be granted unless the new evidence was not available and could not have been discovered and presented at the hearing. 8 C.F.R. § 242.22; *id.* § 3.2. When he appealed to the BIA, Marrero, unlike Sewak, knew all the facts he now alleges support his claim that the immigration court improperly entered an order of deportation against him *in absentia.*

Marrero also had to know that he had not received notice of the nature of the charges against him when he filed his appeal with the BIA. In other respects, his knowledge of the events on which he relies was contemporaneous with their occurrence. Because Marrero knew the true situation as of the day of his deportation hearing, when the *in absentia* order was entered, his decision to appeal to the BIA instead of filing a motion to reopen in the immigration court was a decision not to exercise the available administrative remedy of seeking reconsideration in the immigration court. Had he done so, the statute and the regulations would have given him an opportunity to seek a rehearing because he did not have a reasonable opportunity to attend the hearing at which the immigration court entered its *in absentia* order against him. The circumstances that he avers led to his failure to attend the hearing at the time scheduled could then have been considered.

*Vargas* is instructive. There, the petitioner claimed that the conviction record the INS introduced at his deportation hearing incorrectly stated the length of time and the place of his imprisonment. 831 F.2d at 908. Vargas had not raised this issue either before the immigration court or on direct appeal to the BIA. *Id.* Had he done so, the descriptive error in the conviction record could have been corrected. *Id.* Therefore, it was held Vargas's due process claim was procedural and his failure to timely raise it barred consideration of its merits in the court of appeals. *Id.*

Similarly, had Marrero availed himself of the chance the regulations give him to seek reopening in the immigration court, the INS would have had an opportunity to correct any due process error it might have made in entering its order to deport him *in absentia.* Thus, Marrero's case does not come within the general principle that due process claims are not subject to the requirement that administrative remedies must first be exhausted. *See id.; accord Sewak,* 900 F.2d at 670. When Marrero filed his direct appeal, he deprived the immigration court of jurisdiction over the deportation proceeding pending against him and chose to rely on the appellate powers of the BIA. On the facts of this case, Marrero's election to file an appeal with the BIA instead of a timely motion to reopen in the immigration court was fatal to his cause.

We are not persuaded by Marrero's argument that the events on which he relies can be treated as newly discovered evidence because they were never presented to the immigration court. Since he has never sought to reopen, there is again reliance on *Sewak,* presumably asking us to direct the BIA to remand to the immigration court with instructions to entertain such a motion. Even if we were inclined to adopt that procedure despite the distinctions between this case and *Sewak,* we would be unwilling to accept his argument that any evidence not brought to the immigration court's attention can be treated as new evidence. That proposition would permit a motion to reopen at any time on the basis of any material evidence. The regulations clearly require a person who desires to reopen a deportation order to present evidence not previously known to him. *See* 8

C.F.R. §§ 103.5(a), 242.22. Marrero's suggested interpretation of the regulations on reopening makes little sense. It would give an alien an incentive to withhold deliberately the presentation of material evidence from the immigration court at a properly scheduled hearing. Thereafter, if the BIA on appeal affirmed the immigration court's decision against the alien, he or she could present the withheld facts on a motion to reopen and obtain not only the proverbial "second bite at the apple", but also perhaps a third or a fourth. The INS regulations on reopening should not be read to encourage such delay or proliferation of proceedings in deportation cases. Marrero's knowledge, before he filed a direct appeal to the BIA, of the circumstances that would, he says, provide a due process basis for reopening his deportation proceedings is dispositive of the exhaustion question.

In summary, Marrero, by the time he filed his appeal with the BIA, had to know all the allegations out of which he says his due process claim arises. When he failed to file in the immigration court a motion to reopen the deportation order that court entered against him *in absentia,* he failed to pursue an administrative remedy that was available to correct the due process violation he raises in his twin petitions for review. Accordingly, we cannot consider on their merits any of the issues he presents in those petitions for review.

Marrero's petitions for review will be denied.