**Luis H. GUTIERREZ, Petitioner,**

v.

**John ASHCROFT, et al., Respondent.**

No. CIV. 01–5868.

United States District Court,
D. New Jersey.

Oct. 30, 2003.

structive notice of the failure of the private sale and the scheduling of the public sale. *See* note 8 *supra*.

Sandeep Solanki, Paula Galowitz, Washington Square Legal Services, Inc., New York City, for Petitioner.

Peter G. O'Malley, Office of the U.S. Attorney, Newark, NJ, for Respondents.

## OPINION

HOCHBERG, District Judge.

This matter comes before the Court upon Petitioner's Motion to Make New Findings and to Alter or Amend the Judgment pursuant to Fed.R.Civ.P. 52 and 59(e). This Court has reviewed the submissions of the parties, and has heard extensive oral argument, including an evidentiary hearing to examine the evidence of Petitioner's prior counsel's activities and representations regarding the filing of a pre-deportation habeas corpus petition.

## I.  BACKGROUND

Petitioner, Luis Gutierrez, came to the United States as a Legal Resident on July 4, 1971, at the age of seven.  On April 4, 1995, Mr. Gutierrez pled guilty to five burglaries and was sentenced to four years' imprisonment for each crime.  He served approximately two and one-half years in prison.  In January of 1998, Petitioner was released from prison by the New Jersey parole board after having spent time in both the New Jersey state prison and CURA, a residential drug treatment program in Newark.  Petitioner complied with all the terms of his parole and began working as an electrician's helper at Advanced Electrical Systems, Inc., where he remained employed until April 2000 when he was taken into the custody of the Immigration and Naturalization Service ("INS") pending his removal.  While at his job, Petitioner received promotions and salary increases at a rate and degree unprecedented for that employer.  Petitioner also voluntarily attended CURA's outpatient program and, upon his certified completion, he volunteered as a counselor at CURA until his removal.  In 1999, Petitioner married a U.S. citizen, and they began a family.

On May 15, 1997, while still incarcerated, Petitioner was served with a Notice to Appear in Removal Proceedings.[1]  During the approximately three-year removal proceeding period, Petitioner was represented by counsel.  On May 4, 1998, the Immigration Judge in Newark ordered Petitioner removed and deemed him ineligible for any relief from removal.  Petitioner then filed a timely appeal to the BIA requesting that he be found eligible for discretionary relief under the § 212(c) of the Immigration and Nationality Act ("INA")[2].  On January 11, 2000, the BIA, by a 3–2 vote, denied Petitioner's appeal and request for relief.  The BIA, relying on the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[3], held that the former discretionary relief provision was no longer applicable to Petitioner, since aggravated felons were ineligible for such relief under the then recent amendment to the INA § 212(c) passed the year before Petitioner was served with Notice to Appear in Removal Proceedings.  The BIA's decision included a strongly worded dissent, which presaged the United States Supreme Court's later decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)[4].  On June 25, 2001, the Supreme Court held such a retroactive denial of the former INA § 212(c) hearing to be unconstitutional.  *Id.* If Petitioner's attorney had timely filed a pre-deportation habeas petition, the change in the law as a result of *St. Cyr* would have had a direct effect on Petition-

---

1.  Petitioner was declared removable in accordance with INA § 237(a)(2)(A)(iii), as amended, 8 U.S.C. § 1227(a)(2)(A)(iii), because he was convicted of a felony burglary offense.

2.  The Petitioner had letters of support from his family, friends, employer, and the drug treatment facility where he had been volunteering as a counselor, which qualified him for INA § 212(c) relief under BIA precedents.

3.  In April 1996, Congress enacted the AEDPA, which limited the liberal discretionary waiver provision of the INA § 212(c) by outlining a number of offenses for which such waiver would no longer be available.  Section

212(c) was later completely repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), and the new provision precluded such waiver of deportation for those convicted of aggravated felonies.

4.  In *St. Cyr*, the Supreme Court ruled that neither the AEDPA nor the IIRIRA repealed district courts' jurisdiction to review aliens' habeas petitions filed under 28 U.S.C. § 2241(c), and more importantly, cases pending at the time of the AEDPA would not be retroactively subject to the more rigid discretionary waiver provisions implemented by AEDPA.

er's request for relief from the order of removal. He would have had a right to an INA § 212(c) hearing at which to present the supporting letters that might well have qualified him for § 212(c) relief under BIA precedents.

Petitioner surrendered for deportation, as mandated, on April 4, 2000, and was removed from the United States on May 8, 2000. Only after an evidentiary hearing held pursuant to Petitioner's Motion for Make New Findings did this Court learn that, immediately after April 4, 2000 and well prior to deportation, Petitioner directed his counsel to pursue all legal appeals; the only appeal option available to Petitioner at that time was to file a habeas petition. This Court finds that counsel did not file Petitioner's habeas petition, but represented to Petitioner that he had done so.

Subsequent to his deportation, Petitioner filed a petition for writ of habeas corpus on December 17, 2001. Unaware of counsel's misrepresentations to Petitioner, on November 22, 2002, this Court denied Petitioner's request for habeas relief and dismissed the case for lack of subject matter jurisdiction because the Petitioner was not "in custody" at the time of the filing of the petition for habeas corpus. This Court based its November 22, 2002 ruling upon: (i) the plain language of the federal habeas corpus statute, 28 U.S.C. § 2241(c), which requires that the Petitioner be in custody to avail himself of habeas relief; (ii) *Chong v. INS*, 264 F.3d 378 (3d Cir.2001)[5], which held that the timing of the habeas filing must be pre-deportation in order to meet the "in custody" requirement; and (iii) *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), which gives a

court jurisdiction to consider a habeas petition subsequent to an alien's removal, only if the alien was in custody at the time the habeas petition was filed in district court. *Id.* at 238, 88 S.Ct. 1556.

Following this Court's November 22, 2002 ruling, Petitioner filed with this Court a Motion to Make New Findings and to Alter or Amend the Judgment pursuant to rules 52 and 59(e). Petitioner moved the Court to amend its November 22, 2002 Opinion to reflect certain new evidence germane to this Court's reliance upon *Chong*. Petitioner further moved to alter or amend this Court's judgment that it lacked subject matter jurisdiction over the Petitioner's habeas petition because the Petitioner was not in custody at the time he filed his petition. Petitioner moved the Court to amend the following factual findings or to reconsider the following legal conclusions: (i) based on facts not previously given to the Court, *Chong* and *Carafas* did not preclude a determination that Petitioner was "in custody" for habeas jurisdiction; and (ii) the Court's focus on *Marrero v. INS,* 990 F.2d 772 (3d Cir. 1993) and on whether Petitioner presented a colorable due process violation claim was based upon a factually incorrect assumption by this Court that the Petitioner had made a decision through his counsel not to file a habeas petition while Petitioner was in INS custody and before deportation.

At a June 17, 2003 evidentiary hearing, this Court adduced the following new facts about Petitioner's prior counsel: Before Petitioner's deportation (and, in fact, since the date that the BIA dismissed his appeal), Petitioner's counsel represented to Petitioner that counsel was pursuing all

---

**5.** In *Chong,* the petitioner filed her habeas petition on July 22, 1999. While it was pending, she was deported to Malaysia. The Third Circuit found that it had jurisdiction over the petition because Chong was "in custody" within the meaning of § 2241(c), notwithstanding her removal, because custody is to be determined at the time the petition is filed. *Chong,* 264 F.3d at 382.

available avenues to fight his deportation, including petitioning for a writ of habeas corpus. It was not until Friday, May 5, 2000 (the Friday preceding his deportation at 4:30 a.m. the following Monday) that Petitioner learned to his surprise from an immigration officer that no pending habeas petition could be found and that he would be deported on Monday. Based on records showing several attempts by the immigration officer to search for Petitioner's habeas filing, the Court credits Petitioner's testimony that he believed that a petition for habeas corpus had been filed on his behalf long before deportation and that he communicated such belief to the immigration officer, who searched in vain for a legal record of such filing.

Petitioner's counsel testified that he had decided not to file a petition for habeas corpus because he was pessimistic about his chances of success. Moreover, in taking his time to ponder whether to file Petitioner's habeas petition (unbeknownst to Petitioner, who believed counsel's representations that he had promptly filed), counsel decided to wait for the outcome of a then existing petition that he had filed on March 22, 2000 for another client.[6] That case was decided adversely late in the day on Thursday, May 4, 2000, leaving only one business day (Friday) between counsel's knowledge of the outcome in that case and Petitioner's deportation at dawn on Monday.

The weight of the evidence strongly negates any inference that counsel spoke to Petitioner that Friday and advised him not to file a habeas petition despite Petitioner's request to counsel to file. Moreover, this Court credits the testimony of Petitioner, his wife, and his mother (who paid the legal bills) that counsel led them all to believe that he had already filed the legal

papers shortly after Petitioner was taken into custody on April 4, 2000. The only circumstantial evidence of the events of that crucial Friday is the immigration officer's search for the habeas petition in response to Petitioner's insistence that he should not be deported on Monday because a petition was pending. This negates any remote possibility that Petitioner and counsel conferred that Friday and decided not to file a habeas petition. (Counsel did not call into the detention center and did not accept collect calls outside of regular business hours, i.e., after 5:00 p.m. on Friday. Moreover, no record of any collect call was adduced.) This Court thus finds that, between May 4, 2000 and May 8, 2000, counsel did not: (i) inform Petitioner that counsel, based on the denial of the other client's petition and his assessment of Petitioner's likelihood of success, had decided not to file a petition for habeas corpus; (ii) communicate with Petitioner that the failure to file a petition would constitute a jurisdictional waiver and effectively preclude Petitioner from seeking habeas relief subsequent to his deportation, even though counsel understood the consequences of the failure to file; or (iii) advise Petitioner to file *pro* se or to get new counsel.

This Court further finds that Petitioner's attorney did not file the habeas petition, despite being aware of: (i) the likely time frame in which Petitioner would actually be removed from the United States; and (ii) that failure to file the petition would bar the availability of habeas review. Furthermore, counsel knowingly failed to notify Petitioner, his wife, and his mother prior to the deportation that he had not filed the habeas petition, despite his earlier representations to them that all legal ap-

6. Counsel thought that Petitioner's circumstances mirrored those in the other client's petition, although he acknowledged that Peti-

tioner's case had more apparent positive arguments.

peals were being filed. (While a habeas petition is not an "appeal," it is understandable that a lay person would think the terms were the same.) The Court credits the testimony of Petitioner and various members of his family that counsel affirmatively misrepresented that he had timely filed the legal papers to seek habeas corpus relief, when he had not yet done so.

Petitioner claims that the ineffective assistance of his counsel prevented him from asserting his right to file a petition for habeas corpus and amounted to a colorable due process violation. Furthermore, Petitioner asks this Court to deem his counsel's (in)action as an extraordinary circumstance justifying equitable relief. Thus, the ultimate question before the Court is whether Petitioner's reliance on his attorney's representations that a petition for habeas corpus had been filed *while Petitioner was in custody* constitutes an extraordinary circumstance giving rise to a colorable due process violation that demands equitable relief.

## II. STANDARD OF REVIEW

### A. *Motion to Make New Findings and to Alter or Amend the Judgment*

Fed. R.Civ. P. 52(b) states that "[o]n a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed.R.Civ.P. 59(e) states that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment." Normally, parties seek R. 52(b) relief after a bench trial or where summary judgment has been granted. However, a motion to amend the findings of fact and to amend the judgment is appropriate in habeas proceedings, where the legal analysis may depend upon the underlying facts in the case. *See* 9 Moore's Federal Practice § 52.10[1][b]. The purpose of Rule 52(b) is

to allow a court to correct manifest errors of law or fact, or in limited circumstances, to present newly discovered evidence, but not to "relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *See Soberman v. Groff Studios Corp.*, 2000 WL 1253211 at *1 (S.D.N.Y.2000). A party may not attempt to introduce as "newly discovered evidence" that which was available at trial but not introduced. *See U.S. v. Local 1804–1, Intern. Longshoremen's Ass'n*, 831 F.Supp. 167, 173 (S.D.N.Y.1993). Nor are parties to use Rule 52(b) to allow parties to present their case under new theories. *See Diebitz v. Arreola*, 834 F.Supp. 298, 302 (E.D.Wis.1993).

Rule 59(e) relief is substantially similar. "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *G–69 v. Degnan*, 748 F.Supp. 274, 275 (D.N.J.1990) (*quoting Carteret Savings Bank, F.A. v. Shushan*, 721 F.Supp. 705, 709 (D.N.J.1989)). Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly," *Maldonado v. Lucca*, 636 F.Supp. 621 (D.N.J. 1986), and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention, but not considered. *Pelham v. United States*, 661 F.Supp. 1063, 1065 (D.N.J.1987).

## B. Equitable Relief for Claim of Ineffective Assistance of Counsel

The determination of the equitable relief that Petitioner has sought is inextricably linked to the question of this Court's jurisdiction. Respondent concedes that Petitioner would have been eligible for the INA § 212(c) discretionary hearing had the habeas petition been filed prior to his removal and that this Court would have subject matter jurisdiction over that habeas petition. In effect, if equitable relief is granted in the pending action, Petitioner's habeas petition would be deemed to have been filed while Petitioner was still in the custody of the United States, and this Court would have jurisdiction over Petitioner's habeas petition. It is therefore helpful to examine what constitutes ineffective assistance of counsel in a habeas scenario, and under what circumstances such a claim would warrant equitable relief.

■ Section 2241(c) states that "habeas corpus shall not extend to prisoner unless" the prisoner is "in custody". 28 U.S.C. § 2241(c) (2000). The "in custody" jurisdictional requirement is determined as of the date the habeas petition is filed in district court. *Chong* 264 F.3d at 382–83; *see also Steele v. Blackman,* 236 F.3d 130 (3d Cir.2001). In *Chong,* petitioner filed a habeas petition in district court under 28 U.S.C. § 2241, arguing that the BIA violated her due process rights and erred in determining that she was ineligible for withholding of removal. While petitioner's habeas petition was pending in district court, she was deported. The Third Circuit held that Chong was "in custody" within the meaning of s 2241(c), notwithstanding her removal, because custody is measured at the time the habeas petition was filed.

■ In an earlier ruling in *Marrero,* the Third Circuit held that it would have jurisdiction to review a deportation order after the alien has been deported if the record revealed a colorable due process claim (despite the later repealed 8 U.S.C. § 1105a(c)) and if the petitioner has exhausted all administrative remedies.[7] The court in *Marrero,* while acknowledging that a due process claim involves a fundamental right requiring careful judicial consideration, noted that a bare allegation of a due process violation is insufficient to satisfy jurisdictional requirements. *Id.* at 777. "Instead, the record should show that the due process claim is at least colorable." *Id.* The court found that petitioner set out a colorable claim because the order of deportation that was entered against him *in absentia* violated his right to due process. *Id.*

In *Camacho–Bordes v. INS,* 33 F.3d 26 (8th Cir.1994), the Eighth Circuit adopted *Marrero* and held that, "to protect the fundamental due process rights of aliens," it had jurisdiction, even subsequent to the alien's involuntary deportation, to review the order of deportation if it found a colorable due process violation. *Id.* at 28. *See also Abdelkawy v. INS,* 1998 WL 470157 *3 (E.D.Pa.1998) (reaffirming that "[jurisdictional] review is not barred merely because the alien is no longer in the United States"); WRIGHT & MILLER: FEDERAL PRAC.

---

7. The Third Circuit in *Chong* noted that because *Marrero* did not address whether an Article III case or controversy continued to exist after the alien's deportation, the Supreme Court has cautioned that "drive-by jurisdictional rulings of this sort ... have no precedential effect." *Steel,* 523 U.S. at 91, 118 S.Ct. 1003. In *Chong,* the Third Circuit found that sufficient collateral consequences existed to make Chong's appeal a live case or controversy. In the case before this Court, although neither party has raised the issue of the existence an Article III case or controversy, this Court, in applying *Chong's* "collateral consequences" analysis, finds that Petitioner has a live case or controversy.

& PROC. s 3661, Actions Involving Aliens (1998) (a court of appeals may review a deportation order after the forceful deportation of an alien if there is a colorable due process violation).

■ It is well-established that an alien at deportation proceedings has some form of right to counsel. *See Lu v. Ashcroft,* 259 F.3d 127, 132 (3d Cir.2001) ("Congress has long recognized the importance of counsel in immigration proceedings . . . ."); *Chlomos v. INS,* 516 F.2d 310, 313 (3d Cir.1975) ("An alien subjected to deportation proceedings is entitled to due process of law."). The right to counsel is statutorily and constitutionally grounded. First, INA § 240(b)(4) provides that an alien has the right to counsel in removal proceedings at no cost to the Government. The second basis for the right to counsel is the Fifth Amendment's guarantee of due process. *See Ponce–Leiva v. Ashcroft,* 331 F.3d 369, 374 (3d Cir.2003); [8] *Uspango v. Ashcroft,* 289 F.3d 226, 231 (3d Cir.2002); *Chmakov v. Blackman,* 266 F.3d 210, 216 (3d Cir.2001); *Lu,* 259 F.3d at 131 ("[P]etitioners in deportation proceedings enjoy Fifth Amendment Due Process protections.").

Other circuits also have recognized an alien's right to counsel. *See, e.g., Saakian v. INS,* 252 F.3d 21, 24–25 (1st Cir.2001) (stating that the statutory right to counsel is " 'an integral part of the procedural due process to which the alien is entitled' " (*quoting Batanic v. INS,* 12 F.3d 662, 667 (7th Cir.1993))); *Iavorski v. INS,* 232 F.3d 124, 128 (2d Cir.2000) (same); *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir.1993) (holding that the alien's right to counsel is a "fundamental" right). *See also Reno v. Flores,* 507 U.S. 292, 307, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitled aliens to due process of law in deportation proceedings." (*citing The Japanese Immigrant Case,* 189 U.S. 86, 100–01, 23 S.Ct. 611, 47 L.Ed. 721 (1903))).

Given that a petitioner in deportation proceedings is afforded due process protections—among them a right to counsel—courts have held that the ineffective assistance of counsel can constitute a denial of due process. *See Lu,* 259 F.3d at 131 (*citing Lozada v. INS,* 857 F.2d 10, 13–14 (1st Cir.1988) (holding that a denial of due process occurred when the ineffective assistance of counsel prevented an alien from reasonably presenting his case)). *See also Hernandez v. Reno,* 238 F.3d 50, 55 (1st Cir.2001) ("Where counsel does appear for the respondent, incompetence in some situations may make the proceeding *fundamentally unfair* and give rise to a Fifth Amendment due process objection."); *Castaneda–Suarez v. INS,* 993 F.2d 142, 144 (7th Cir.1993) ("Counsel at a deportation hearing may be so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.").

■ If the ineffective assistance of counsel can amount to a violation of petitioner's due process protections, this Court must determine whether this particular instance of ineffective assistance of counsel falls into the narrow category of extraordinary circumstances that may merit equitable relief. In considering equitable relief, this Court notes that the time limitation

---

8. Immigration hearings, though civil in nature, differ from the average garden variety civil case because the deprivation involved in removing someone from the United States is great. *Ponce–Leiva,* 331 F.3d at 381 (Rendell, J. dissenting) ("Though deportation is not technically a criminal proceeding, it visits great hardship on the individual and deprived him of the right to stay and live and work in this land of freedom . . . . Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.").

for filing a habeas petition is a statute of limitations subject to equitable tolling. *See, e.g., Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir. 1998) (equitable tolling is an appropriate remedy when principles of equity would make a rigid application of the statute of limitations unfair); *Shendock v. Office of Workers' Compensation Programs,* 893 F.2d 1458, 1462 (3d Cir.1990) (same). In *Miller,* the district court denied petitioner's habeas petition because it was filed more than one year after the one year limitation period of 28 U.S.C. § 2244(d)(1) became effective under the AEDPA.[9] The Third Circuit reversed on the ground that the time limitation provision of § 2242(d)(1) is not a jurisdictional bar, but is analogous to a statute of limitations and, therefore, is subject to equitable modifications such as tolling. *Miller,* 145 F.3d at 617 (citing *Calderon v. United States Dist. Court,* 128 F.3d 1283, 1289 (9th Cir.1997), *cert. denied,* 522 U.S. 1099, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998)). *See also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir.1994); *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1125 (3d Cir.1997).

▇ A mere claim of ineffective assistance of counsel is insufficient to constitute a denial of due process. To determine whether there has been a violation of petitioner's due process protections, this Court must assess the severity of the ineffective assistance of counsel. *See Uspango,* 289 F.3d at 231 ("[T]o meet the standard for a due process violation, [petitioner] must show that he was 'prevented from reasonably presenting his case' " (*citing Lozada,* 857 F.2d at 13–14)). *See generally Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (requir-

ing petitioner claiming that his death sentence was the result of the ineffective assistance of counsel to demonstrate: (1) that the counsel's performance was in some way deficient, and (2) that deficiency must in some way have prejudiced the petitioner's defense).

### 1. The Absence of Counsel

▇ The mere absence of counsel, or inaction by counsel, may not rise to the level of ineffective assistance of counsel requiring equitable relief. In *Ponce–Leiva,* where petitioner's counsel had abandoned the case two days prior to the hearing before the Immigration Judge, the Third Circuit denied the petition, holding that "the onus was on counsel to provide an adequate reason for his failure to appear." *Ponce–Leiva,* 331 F.3d at 376. The court further noted that "poor lawyering" does not violate the petitioner's right to counsel. *Id.* By contrast, in *Calderon,* the Ninth Circuit decided, where the lead attorney moved out of state and the junior attorney was overburdened with the filing of the habeas petition, it was appropriate to toll the statute of limitations for filing, since circumstances beyond the control of the petitioner made it impossible to file the petition on time. *Calderon,* 112 F.3d at 391.

In *Brown v. Shannon,* 322 F.3d 768 (3d Cir.2003), where petitioner's attorney failed to obtain the necessary transcripts for a habeas petition and notified the petitioner he would not be filing the petition, the Third Circuit found that equitable tolling was unnecessary because the petitioner was notified that the petition was not filed, and, importantly, that the notification came in time for the petitioner to find

---

**9.** Even though 28 U.S.C. § 2244(d)(1) addresses the limitation period of a habeas petition filed by a person in custody pursuant to the judgment of a State court, this Court finds

that the application of equitable relief may be also appropriate in the general context of 28 U.S.C. § 2241(c), where a time limitation provision is absent.

other counsel or to file the petition *pro se.* The attorney's decision not to pursue the petition did not foreclose the petitioners ability to do so. *Brown,* 322 F.3d at 774. The court further noted that, in general, equitable tolling will only be warranted where "the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.'" *Id.* at 773 (*quoting Miller,* 145 F.3d at 618 (internal citations omitted)).

### 2. Mistake of Counsel

■ The failure to file because counsel made a mistake or relied on incorrect information does not constitute an extraordinary circumstance that requires equitable relief. In *Taliani v. Chrans,* 189 F.3d 597 (7th Cir.1999), petitioner's attorney filed his habeas petition late because he miscalculated the time period in which the petition needed to be filed due to inadequate research. Though recognizing that the limitations period can be subject to equitable tolling, the Seventh Circuit held that counsel's mistake is usually not grounds for equitable relief. *Id.* at 598. *See also U.S. v. Hudson,* 2001 WL 236734 (E.D.Pa. 2001) (a lawyer's mistaken reliance upon the docket entry date as the starting point from which the statute of limitations began to run did not warrant equitable relief); *Kapral v. U.S.,* 166 F.3d 565, 568 (3d Cir.1999) ("[equitable tolling] is proper only when principles of equity would make the rigid application of a limitation period unfair .... Mere excusable neglect is not sufficient."); *Johnson v. Hendricks,* 314 F.3d 159, 162–63 (3d Cir.2002) (reliance on mistaken attorney advice, where such mistake did not prevent petitioner from asserting his rights, does not give rise to extraordinary circumstances sufficient to justify equitable relief from the statute of limitations).

### 3. Affirmative Misrepresentations by Counsel

While absence of counsel and mistake by counsel may not rise to the level of extraordinary circumstances that permit equity relief, courts have applied equitable relief where an attorney has told a petitioner an outright lie. In *Seitzinger v. The Reading Hospital and Medical Center,* 165 F.3d 236 (3d Cir.1999), the Third Circuit granted equitable relief to the petitioner whose attorney told her that he had filed a Title VII action against her former employer, but had not done so. *Id.* at 242. In evaluating whether or not equitable relief is appropriate, the court adopted a balancing test that weighs the extent of the misconduct the attorney is accused of, the diligence of the client in pursuing and asserting their rights, and any prejudice the alleged misconduct caused to the petitioner's case. *Id.* Although garden variety attorney neglect does not justify the equitable tolling of the statute of limitations the court held that "affirmative misrepresentations to his client about the very filing at issue rise above that standard," *Id.* at 241, and equitable relief was thus appropriate.

### III. ANALYSIS

In considering Petitioner's Motion to Make New Findings and to Alter or Amend the Judgment, this Courts has reexamined Petitioner's case in light of the following newly discovered evidence, *inter alia:* (1) Petitioner's prior counsel's admissions in his affidavit and testimony, which amounted to an ineffective assistance of counsel in the form of misrepresentations by counsel to Petitioner and his family; and (2) subpoenaed government records of an immigration officer's last-minute search for Petitioner's habeas filing prior to his deportation, thus demonstrating Petitioner's belief that his petition had been filed

by his counsel and that petition was to be found among the immigration records. The critical issues arising from the newly discovered evidence in the case at bar are: (a) whether Petitioner's counsel's conduct amounts to extraordinary circumstances justifying equitable relief; (b) steps that Petitioner took to assert his right; and (c) whether Petitioner's case was in fact prejudiced by the ineffective assistance of counsel.

Petitioner was clearly prejudiced by his counsel's behavior. The only way that Petitioner could avoid removal from the United States was through the discretionary relief pursuant to 8 U.S.C. § 1182(c), i.e., an INA § 212(c) hearing. It is equally clear that at the time of his removal that avenue of relief was closed to Petitioner.[10] Nonetheless, the strong dissent and the pendency of the issue posed in *St. Cyr* in courts of appeals made it clear to the immigration law bar that it was possible, if not probable, that such discretionary relief might well be opened up again for habeas petitioners with valid retroactivity claims, such as Petitioner. Petitioner's own attorney testified that the proper course of action was to wait it out and hope that case law would develop in a positive way. In fact, such positive developments did follow in the law and would have granted Petitioner a discretionary relief hearing if his habeas petition had been pending. *See St. Cyr*, at 314–15, 121 S.Ct. 2271. Had Petitioner's habeas petition been filed when he was told by counsel that it had been, and had he pursued all available appeals, Petitioner would have been eligible for such discretionary consideration in the aftermath of the *St. Cyr* decision. Therefore,

Petitioner was prejudiced by the ineffective assistance of counsel.

Though counsel could not recall whether he and Petitioner discussed filing a habeas petition by name, it is abundantly clear from the testimony of Petitioner and his family that Petitioner and his family had been told by counsel that an appeal had been filed, when that was untrue. The testimony reveals that counsel was aware that Petitioner and his family believed that he had filed the habeas petition. Petitioner testified credibly that counsel informed him that the best chance he had was to keep the case going as long as possible. Petitioner's testimony conforms with his counsel's testimony that this was his only option to avoid removal from the United States. Petitioner called his attorney two or three times a week once he surrendered to the immigration detention center, thus demonstrating his diligence in pursuing his remedies. On the occasions that he actually spoke with his attorney, Petitioner was told "we just have to wait for the appeal." When Petitioner was informed on May 5, 2000 that he was to be deported on May 8, 2000, he was told by INS officers that there was no appeal pending at all. This was the first time Petitioner learned that no further legal action on his case had been taken by counsel, despite his counsel's representations to the contrary. Petitioner contacted his family immediately so that they could contact his attorney to find out what was going on, and they were told by counsel "not to worry" and that he would "talk to that lady," referring to the immigration officer who was attempting to verify Petitioner's insistent claim that he had a petition for relief pending.

10. The BIA had determined that Petitioner's case was governed by *DeSousa v. Reno*, 190 F.3d 175 (3d Cir.1999), which held that where the criminal offense occurred prior to the enactment of AEDPA, but the Removal Proceedings commenced after, then the revised INA § 212(c) controlled, and no discretionary waiver was permitted where the alien had committed an aggravated felony. *Id.* at 187. This interpretation was later ruled erroneous by the Supreme Court in *St. Cyr*.

The assurances were made to the family on the only business day between the time that counsel had decided that a habeas petition would be futile and actual deportation. Unbeknownst to Petitioner, counsel had unilaterally decided to await a decision on a habeas petition in a similar case and had decided not to proceed with Petitioner's petition if that other case had a negative result. The somewhat similar habeas case was decided adversely late Thursday afternoon, May 4, 2000, and counsel then determined that such filing on Petitioner's account would be similarly unsuccessful. Yet, on May 5, 2000, counsel still assured Petitioner's family "not to worry" and that he would get in touch with the immigration officer to straighten things out. He did nothing, and Petitioner was awakened for deportation at 4:30 a.m. on Monday, May 8, 2000. Between Thursday afternoon and early Monday morning, counsel did not communicate to Petitioner that he had not filed a habeas petition, while Petitioner was at all times led to believe that a habeas petition was pending before this Court.

Based on all the evidence before it, this Court finds that counsel misled Petitioner and misrepresented to Petitioner that he had filed Petitioner's habeas petition. Counsel admittedly knew that failure to file a habeas petition prior to Petitioner's removal would result in Petitioner's forfeiting his right to do so. Additionally, counsel was aware that Petitioner could be deported within days or a few weeks of his surrender to the INS on April 4, 2000. Counsel never informed Petitioner that no further legal proceedings had been filed, despite Petitioner's clear directive to file same, nor that counsel was waiting for the outcome of the parallel habeas case before deciding whether to file. Rather, counsel continually told Petitioner and his family that they should relax and wait for the judge to decide Petitioner's appeal, an outright fiction. Counsel asked the family to solicit letters of character reference for Petitioner, telling the family that they would be useful for the appeal. Counsel did nothing to indicate to his client that he had not filed the petition. Counsel's misrepresentations cause the facts of this case to be unique and extraordinary, and counsel's action, thus, crosses the line from mistake to misrepresentation.

Had Petitioner had a habeas petition pending when *St. Cyr* was decided, he would have had an INA § 212(c) hearing. Over fifty percent of such discretionary claims are granted, *St. Cyr*, 533 U.S. at 296 n. 5, 121 S.Ct. 2271, and since Petitioner had demonstrably been rehabilitated and maintained close family and work ties in the United States, he had a substantial likelihood of success. The Government has argued that an alien has no property interest or right to discretionary relief and that this bars a due process claim under the Fifth Amendment. *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir.2002); *accord Mohammed v. Ashcroft*, 261 F.3d 1244, 1250 (11th Cir.2001) ("[A]n alien does not have a constitutionally protected interest in receiving discretionary relief from removal or deportation."); *U.S. v. Lopez–Ortiz*, 313 F.3d 225, 231 (holding that the availability of INA § 212(c) relief does not convey any constitutional right to such a waiver, and "its denial does not implicate the Due Process Clause").

In *Smith*, the petitioner had requested discretionary relief under INA § 212(c),[11] which was denied. His appeal was also denied, and he filed a petition for habeas review, which was ultimately dismissed.

11. This was prior to the enactment of the AEDPA which, until *St. Cyr*, was interpreted as precluding this discretionary waiver in many cases, including those in *Smith* (drug offenses) and the case at bar.

After deportation, the petitioner again appealed, and the Fourth Circuit found that since there is no constitutionally protected right to discretionary relief, review of the administrative denial is not required, as there is no Fifth Amendment violation. *Smith*, 295 F.3d at 430–431. Smith, however, had the opportunity to fully present his case in a habeas proceeding prior to being deported, and he did not claim that ineffective assistance of counsel precluded a full assertion of his rights. Furthermore, both *Mohammed and Lopez–Ortiz* involved petitioners who had waived counsel and thus had no claim that ineffective assistance of counsel in any way prejudiced their case.

The Government relies on the aforementioned cases to demonstrate that the potential relief which Petitioner hoped for, the INA § 212(c) discretionary waiver, is not a "right." Petitioner, however, is not claiming that it was a "right," but rather that he was precluded from even presenting his case via a hearing because of his counsel's misrepresentations. Because of the ineffective assistance of counsel, Petitioner was prevented from hiring another attorney to represent him in filing the petition, or from filing a habeas petition *pro se*. *Smith, Mohammed* and *Lopez–Ortiz* are inapposite because Petitioner does not claim a right to the discretionary relief under INA § 212(c), but rather the right to preserve his jurisdiction basis to invoke *St. Cyr* to get a hearing. Petitioner claims a right to the due process protections afforded to him under INA § 240(b)(4) and the Fifth Amendment.

▮ The facts of this case are in line with those of *Seitzinger*. Outright misrepresentations by counsel which preclude a petitioner from asserting his rights justify the application of equitable relief. *Seitzinger*, 165 F.3d at 241. Because Petitioner believed his attorney was pursuing all avenues of relief available, he did not hire other counsel, or file an action *pro se*. Moreover, had the petition been timely filed, the petition and any appeals would surely have continued long enough to allow Petitioner the benefit of the *St. Cyr* decision. This was no mere mistake of counsel, which historically does not warrant equitable tolling. *Taliani*, 189 F.3d at 598. Nor was counsel operating under false information, *Hudson*, 2001 WL 236734 at *3, which would also not be extraordinary. Rather, this Court finds that counsel affirmatively and knowingly misled his client. Because Petitioner reasonably relied on his counsel, and because the misrepresentations by counsel were extraordinary and resulted in clear prejudice, this Court exercises its narrow discretion to grant equitable relief.

This Court will grant Petitioner's Motion to Make New Findings and to Alter or Amend the Judgment because of the aforementioned newly discovered evidence and to prevent a manifest injustice. As equitable relief, this Court finds that the only relief that prevents substantial injustice is to deem Petitioner's habeas petition to have been filed, *nunc pro tunc*, April 2000, when counsel represented to Petitioner that he had filed further legal proceedings. Consistent with *Marrero*, this Court has entertained Petitioner's colorable due process claim. Furthermore, because Petitioner's habeas petition was filed *nunc pro tunc* prior to his deportation, this Court finds that Petitioner has satisfied the "in custody" jurisdictional requirement of *Chong*. This Court hereby vacates its November 22, 2002 Opinion and Order and grants Petitioner's petition for habeas corpus relief under *St. Cyr*. Respondent shall conduct an INA § 212(c) hearing.