

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-16-2005

# Gutierrez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4798

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Gutierrez v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1449.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1449

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 03-4798/04-1031
_____

LUIS HERNAN GUTIERREZ,

Appellee/Cross-Appellant

v.

*ALBERTO GONZALES, Attorney General Of The United States;
JAMES ZIGLAR, Commissioner of the U.S. Immigration and
Naturalization Service; ANDREA QUARANTILLO, U. S. Immigration
and Naturalization Service District Director for the District of New Jersey;
U.S. IMMIGRATION AND NATURALIZATION SERVICE,

Appellants/Cross-Appellees,

*Substituted pursuant to Rule 43c, F.R.A.P.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-05868)
District Judge: The Honorable Faith S. Hochberg
_____

Argued on February 11, 2005

Jeffrey J. Berstein, Senior Litigation Counsel (Argued)
Office of Immigration Litigation
United States Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

Peter G. O'Malley, Esq.
Office of the United State Attorney
970 Broad Street
Room 700
Newark, NJ    07102

Counsel for Appellant/Cross-Appellee

Angelica Jongco, Legal Intern (Argued)
Nancy Morawetz, Esq.
Sejal Zota, Esq.
Washington Square Legal Services
245 Sullivan, 5th Floor
New York, NY 10012

Counsel for Appellee/Cross-Appellant

Jennifer Ching, Esq.
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One River Front Plaza
Newark, NJ   07102

Counsel for Amicus in Support of Appellee/Cross-Appellant

———————

No. 03-1086
———————

LUIS HERNAN CASTRO-GUTIERREZ,

Petitioner,

v.

ALBERTO GONZALES, Attorney General Of The United States,

Respondent,
———————

2

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A30-429-435)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 11, 2005

BEFORE: BARRY, FUENTES and VAN ANTWERPEN, Circuit Judges.

(Filed: March 16, 2005 )

OPINION

VAN ANTWERPEN, Circuit Judge

These consolidated cases arise from the same set of facts. Luis Gutierrez-Castro ("Petitioner" or "Gutierrez") is a native of Colombia who came to the United States as a permanent legal resident in 1971. On May 8, 2000, he was removed as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). On December 17, 2001, Petitioner filed for habeas corpus relief in light of the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 589 (2001). He also made a motion to reopen his case with the Board of Immigration Appeals ("BIA") on February 26, 2002. The BIA denied the motion to reopen, and Petitioner filed the underlying Petition for Review (No. 03-1086) on January 10, 2003. On March 28, 2003, this Court stayed the proceedings in 03-1086 pending the outcome of the habeas proceedings.

3

On October 31, 2003, the District Court granted habeas relief. The government then appealed (No. 03-4798), and Petitioner cross-appealed the District Court's conclusion that aliens who have already departed the United States cannot meet the custody requirement imposed by the habeas statute (No. 04-1031). On February 24, 2004, this Court lifted the stay on the Petition for Review and consolidated it with cases 03-4798 and 04-1031 for disposition. We now consider the government's appeal, Petitioner's cross-appeal, and the Petition for Review. For the reasons set forth below, we affirm the District Court's grant of habeas relief and dismiss Petitioner's cross-appeal and the Petition for Review as moot.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner came to the United States from Colombia at the age of 7. He grew up in New Jersey, where he attended high school and vocational school. He obtained legal permanent resident status and remained here for approximately 29 years until his removal on May 8, 2000. In 1995, Petitioner plead guilty to five burglaries and served approximately two and one-half years in prison for those crimes. Following his release from prison in January 1998, Petitioner complied with all terms of his parole and began working as an electrician's helper, a job which he retained until he entered INS[1] custody in April 2000. Petitioner also married an American citizen in 1999 and started a family.

---

[1] We use the term "INS" to include the former Immigration and Naturalization Service as well as its successor agencies, the Department of Homeland Security, the Bureau of Border Security, and the Bureau of Immigration and Customs Enforcement.

In addition, he attended a drug treatment program and volunteered as a counselor once his own treatment was completed.

On May 15, 1997, while he was still incarcerated, the INS initiated removal proceedings against Petitioner based on his aggravated felony convictions.[2]  On May 4, 1998, an Immigration Judge ("IJ") ordered Petitioner removed to Colombia and deemed him ineligible for any relief from removal.  Petitioner appealed to the BIA, requesting that he be found eligible for discretionary relief under former section 212(c) of the Immigration and Nationality Act ("INA").[3]

On January 11, 2000, the BIA voted 3-2 to deny Petitioner's request for relief. The majority relied on section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which eliminated the availability of § 212(c) relief for aggravated felons.  This decision later proved to be an erroneous interpretation of AEDPA when the Supreme Court decided St. Cyr in June 2001.  In that case, the Court

---

[2] Petitioner's burglary convictions fall within the definition of "aggravated felonies" given in 8 U.S.C. § 1101(a)(43)(G).

[3] Under this provision, a lawful permanent resident alien could seek a discretionary waiver of deportation after accruing seven years of permanent residence in the United States.  A subsequent amendment barred § 212(c) relief to aggravated felons who served more than 5 years in prison; however, Gutierrez, having served less than 5 years, was not affected by this change.  Section 212(c) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") effective April 1, 1997.

The government has suggested before this Court that Petitioner never actually applied for discretionary relief under section 212(c).  However, the BIA's decision, dated January 11, 2000, explicitly references Petitioner's application for relief under INA sections 212(c) and 212(h). Moreover, the government conceded before the District Court that Petitioner's application for habeas relief did not give rise to any exhaustion or default issues.

held that discretionary waivers of removability under § 212(c) are still available to aliens whose aggravated felony convictions were entered pursuant to a plea agreement prior to the 1996 amendments to the INA. Had the agency applied the law as announced in St. Cyr to Petitioner's removal proceedings, he would have been eligible for a discretionary waiver under § 212(c).[4] As such, the agency's decision not to consider a § 212(c) waiver in Petitioner's case was premised on an error of law. The BIA decision was accompanied by a strongly worded dissent, which adopted the same reading of the 1996 amendments that the Supreme Court later articulated in St. Cyr.

Petitioner did not, however, formally seek review of the BIA's decision, as his retained attorney ignored repeated requests to file an appeal. In accordance with the BIA's order, Petitioner was removed to Colombia on May 8, 2000. On December 17, 2001, long after his removal, and after the Supreme Court issued its ruling in St. Cyr, Gutierrez filed a petition for writ of habeas corpus in the District of New Jersey. On November 25, 2002, the District Court denied habeas relief and dismissed the case for lack of subject matter jurisdiction, finding that because Petitioner was in Colombia when he filed his petition, he could not meet the jurisdictional custody requirement imposed by the habeas statute. See 28 U.S.C. § 2241(c).

On December 9, 2002, Petitioner filed a Motion to Make New Findings and to Alter or Amend the Judgment pursuant to Rules 52(b) and 59(e) of the Federal Rules of

---

[4] Over half of § 212(c) applications properly made were granted. See St. Cyr, 533 U.S. at 296 n.5.

6

Civil Procedure ("Motion to Reconsider") with the District Court. The Motion to Reconsider asked the court to take notice of new evidence regarding the failure of Petitioner's attorney to file his habeas petition. Petitioner contended that ineffective assistance of his prior counsel should be considered in correcting the "factually incorrect assumption by [the District] Court that the Petitioner had made a decision through his counsel not to file a habeas petition while Petitioner was in INS custody and before deportation." Gutierrez v. Ashcroft, 289 F. Supp. 2d 555, 559 (D.N.J. 2003).

The District Court granted Petitioner's motion and held an evidentiary hearing to consider the effect of his attorney's incompetence. Based on the information obtained in the evidentiary hearing, which was unknown to the District Court when it initially dismissed Petitioner's case, the court vacated its Order of November 25, 2002, and granted the petition for habeas relief on October 31, 2003.

In the District Court's opinion, Judge Hochberg made specific factual findings regarding the ineffectiveness of Petitioner's prior counsel. The court found that Petitioner ordered his attorney to file a habeas petition on numerous occasions prior to his removal, and that the attorney made affirmative misrepresentations to Petitioner and his family, repeatedly claiming that an "appeal" had already been filed. She also found that, despite the attorney's unilateral decision not to file the petition, Gutierrez reasonably believed that a habeas petition had been filed before his removal date, and that he "communicated such belief to the immigration officer, who searched in vain for a legal

7

record of such filing." Id. at 560. Moreover, when Petitioner finally learned from the immigration officer on the late date of May 5, 2000, that no petition had been filed on his behalf, his family contacted the attorney, who then continued to lie to Petitioner's family, stating that "he would get in touch with the immigration officer to straighten things out." Id. at 566. Counsel's conduct was egregious and went well beyond mere fecklessness.

Citing this Court's ruling in Marrero v. INS, 990 F.2d 772, 777 (3d Cir. 1993), the District Court determined that Petitioner was entitled to equitable relief to cure his failure to meet the custody requirement under § 2241(c). In Marrero, we exercised jurisdiction to review a deportation order even after the alien has actually been deported, notwithstanding the jurisdiction stripping provision at 8 U.S.C. § 1105a(c),[5] if the record revealed a colorable due process claim. The District Court found that the record in this case revealed a colorable ineffective assistance of counsel claim, thereby empowering the court to consider the habeas petition notwithstanding the failure to show actual custody.

As to the jurisdictional defect in the habeas petition, the District Court concluded, "the only relief that prevents substantial injustice is to deem Petitioner's habeas petition to have been filed, *nunc pro tunc*, April 2000, when counsel represented to Petitioner that he had filed further legal proceedings." Id. Considering the petition to have been filed when Petitioner was still in INS custody, the District Court granted habeas relief and ordered the government to grant Petitioner a § 212(c) hearing in accordance with St. Cyr.

_____

[5] This provision, which was repealed in 1996, divested federal courts of jurisdiction to review any final order of deportation after the alien had already departed.

On February 22, 2002, while the habeas petition was still pending, Petitioner filed a motion with the BIA to reopen his removal proceedings in light of the St. Cyr ruling, and the government did not oppose this motion. On December 12, 2002, the BIA denied the motion, finding that 8 C.F.R. § 1003.2(d)[6] divests the Board of jurisdiction to hear Petitioner's motion, which was filed after his "departure." Petitioner then filed a timely Petition for Review with this Court on January 10, 2003. On March 28, 2003, the Petition was held in abeyance pending the outcome of the habeas proceedings.

On December 17, 2003, the government appealed the District Court's grant of habeas relief. On December 29, 2003, Petitioner cross-appealed the District Court's November 25, 2002, ruling that aliens cannot meet the custody requirement after removal is accomplished. On February 24, 2004, this Court lifted the stay on the Petition for Review and consolidated it with the two habeas appeals for disposition.

## II. DISCUSSION

A.    The District Court's Grant of Habeas Corpus Relief

We first address the government's appeal of the District Court's October 31, 2003, decision granting Gutierrez's habeas petition. The government claims that the District Court erred in granting an "equitable" remedy in order to create jurisdiction to consider Gutierrez's petition. Specifically, the government argues that equitable remedies such as

---

[6] This regulation precludes motions to reopen "by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." 8 C.F.R. § 1003.2(d).

*nunc pro tunc*[7] cannot be used to override the jurisdictional custody requirement of 28 U.S.C. § 2241(c). The government also contends that Petitioner's Motion to Reconsider the November 25, 2002, Order under Rules 52(b) and 59(e) was improvidently granted by the District Court. While we agree with the government that equitable remedies may not override the express will of Congress to create a jurisdictional requirement, we disagree that the District Court was without jurisdiction over the habeas petition in this case. We therefore affirm the District Court's grant of habeas relief, although on slightly different grounds.[8]

1. *Standard of Review*

We review a District Court's grant of a writ of habeas corpus *de novo*. Duvall v. Elwood, 336 F.3d 228, 229 (3d Cir. 2003). To the extent that the District Court's decision to grant the Motion to Reconsider is challenged, we generally review the grant of a motion under Rules 52(b) or 59(e) for abuse of discretion. See Federal Kemper Ins. Co.

---

[7] *Nunc pro tunc*, literally "now for then," allows a court sitting in equity to deem an action to have been taken as of a time when it should have been taken, but was not due to circumstances not attributable to the laches of the parties. Mitchell v. Overman, 103 U.S. 62, 65 (1881); see also Edwards v. INS, 393 F.3d 299, 308-311 (2d Cir. 2004); Iavorski v. INS, 232 F.3d 124, 130 n.4 (2d Cir. 2000); Ethyl Corp. v. Browner, 67 F.3d 941, 945 (D.C. Cir. 1995); Batanic v. INS, 12 F.3d 662, 667 (7th Cir. 1993). A court may generally grant *nunc pro tunc* relief "as justice may require, in view of the circumstances of the particular case." Mitchell, 103 U.S. at 65; see also Edwards, 393 F.3d at 308-311; Weil v. Markowitz, 829 F.2d 166, 175 (D.C. Cir. 1987).

[8] See Erie Telecomm., Inc. v. City of Erie, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988) (citing Helvering v. Gowran, 302 U.S. 238, 245 (1937); SEC v. Chenery Corp., 318 U.S. 80, 88 (1943); PAAC v. Rizzo, 502 F.2d 306, 308 n.1 (3d Cir. 1974)) ("An appellate court may affirm a correct decision by a lower court on grounds different than those used by the lower court in reaching its decision.").

10

v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1987); Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 333 (3d Cir. 1985).  However, if the grant of the Motion to Reconsider was based on the application of a legal precept, we exercise plenary review. Id.  Finally, when reviewing a District Court's exercise of equitable authority, we review for abuse of discretion.  Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir. 1989).

      2.       *Timeliness of Petitioner's Motion to Reconsider*

In its initial brief to this Court, the government contends that Petitioner's Motion to Reconsider the November 25, 2002, Order was untimely filed.  Rules 52(b) and 59(e) require filing within 10 days of the entry of the judgment.  Although the District Court's Order and Opinion was dated November 22, 2002, the judgment was not *entered* until November 25, 2002.  Excluding intermediate weekend days and the Thanksgiving holiday from the calculation of Petitioner's time to file, Fed. R. Civ. P. 6(a), the filing of the Motion to Reconsider with the District Court on December 9, 2002, was timely.

      3.       *Section 2241(c)'s Jurisdictional Custody Requirement*

The government points out that a District Court's powers in equity are limited and cannot be used to override a clear jurisdictional mandate from Congress.  United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 497 (2001); Miller v. French, 530 U.S. 327, 338 (2000); INS v. Pangilinan, 486 U.S. 875, 883 (1988).  Therefore, because § 2241(c) requires a petitioner to be "in custody" as a jurisdictional prerequisite, the government argues that Congress has divested federal courts of jurisdiction to hear any

case where the custody requirement is not satisfied, regardless of equitable

considerations.

It is without dispute that § 2241(c)'s custody requirement is jurisdictional. See

Maleng v. Cook, 490 U.S. 488, 490 (1989); Carafas v. LaVallee, 391 U.S. 234, 238

(1968). Even though the District Court's powers in equity cannot be used to cure a

jurisdictional defect, Petitioner argues that equitable relief has been used in some cases

and points to the "prison mailbox rule" and our decision in Marrero as examples.

However, those cases involved statutory interpretation of the language Congress used to

create jurisdictional requirements rather than the use of equitable remedies to circumvent

that language.[9] These cases thus do not support the District Court's disregard for the

---

[9] Only one of the cases relied on by Petitioner arguably involves the application of *nunc pro tunc* to cure a jurisdictional defect – this Court's decision in Solis v. United States, 252 F.3d 289 (3d Cir. 2001). In that case, the appellant told his attorney to file a direct appeal of his criminal conviction, and the attorney failed to do so, thereby preventing the timely filing of an appeal. Notwithstanding the fact that the time limit imposed by Fed. R. App. P. 4(b) for filing a notice of appeal in a criminal case is jurisdictional, United States v. Robinson, 361 U.S. 220 (1960), we held that if the appellant's attorney was constitutionally ineffective, "Solis must be given the opportunity *nunc pro tunc* to brief his direct appeal in full." Solis, 252 F.3d at 295.

Solis does not support the use of an equitable remedy in this case for two reasons. First, nowhere in that case did this Court invoke equitable authority. Use of the phrase "*nunc pro tunc*" without more merely indicates that we would consider Solis' appeal as if it was filed at a time when it should have been filed. It does not necessarily indicate that we were formally invoking the equitable remedy of the same name. Second, unlike Solis, we cannot find that Petitioner's counsel in this case was "constitutionally ineffective," despite the deplorable nature of his attorney's conduct, because the right to counsel does not extend to habeas proceedings. See Coleman v. Thompson, 501 U.S. 722, 755 (1991).

Although the District Court cited a number of cases recognizing a Fifth Amendment right to counsel in immigration proceedings, the reach of those cases is limited the rights of immigrants during agency proceedings. See, e.g., Ponce-Leiva v. Ashcroft, 331 F.3d 369 (3d

12

well-established rule that jurisdictional prerequisites cannot be circumvented by equitable considerations. Therefore, we find that the District Court erred in basing its finding of jurisdiction on the grant of *nunc pro tunc* relief.

We disagree, however, that the phrase, "in custody," represents a clear intent to preclude the exercise of jurisdiction when faced with the unique situation that this case presents. The habeas statute states that "habeas corpus shall not extend to a prisoner unless" he "*is* in custody." 28 U.S.C. § 2241(c) (emphasis added). A strict reading of this present-tense language would lead to a rule whereby a petitioner would have to be physically detained at the time of the issuance of the writ.

Both this Court and the Supreme Court have declined to apply the custody requirement so strictly. In Carafas, jurisdiction was proper where the petitioner filed for habeas while still incarcerated, even though he was released from state custody prior to the adjudication of his petition. 391 U.S. at 238-39. In so holding, the Court explicitly overruled its prior decision in Parker v. Ellis, 362 U.S. 574, 576 (1960), where it had held that "it is a condition upon this Court's jurisdiction to adjudicate an application for habeas corpus that the petitioner be in custody when that jurisdiction can become effective." See

Cir. 2003); Uspango v. Ashcroft, 289 F.3d 226 (3d Cir. 2002); Lu v. Ashcroft, 259 F.3d 127 (3d Cir. 2001); Chmakov v. Blackman, 266 F.3d 210, 216 (3d Cir. 2001) (leaving open the possibility that aliens were denied due process because their attorney failed to file a *direct appeal* with this Court). The right to counsel in immigration proceedings has never been extended to create a right to effective assistance of counsel in filing a habeas petition. Therefore, no matter how egregious her attorney's conduct may have been, we cannot find ineffective assistance where Petitioner had no right to counsel. Wainwright v. Torna, 455 U.S. 586, 587-88 (1982).

13

Carafas, 391 U.S. at 240.  By overruling Parker, Carafas clearly rejected the old notion that because the custody requirement is jurisdictional, whether the petitioner is actually in custody ends a court's inquiry.[10]

In Chong v. INS, 264 F.3d 378, 382 (3d Cir. 2001), this Court relied on Carafas and construed "custody" broadly to find federal jurisdiction over the habeas petition of an alien who was no longer in INS detention.  See also Steele v. Blackman, 236 F.3d 130, 134 n.4 (3d Cir. 2001).  Chong and Steele involved aliens who filed habeas petitions prior to their removal to other countries.  Even though the government's custody over them had technically ended, we found that "§ 2241(c)'s admonition that 'habeas corpus shall not extend to a prisoner unless' the prisoner is 'in custody' does not deprive us of jurisdiction to review [the alien's] petition."  Chong, 264 F.3d at 382.  We have thus rejected the notion that the language of § 2241(c) precludes habeas jurisdiction in all cases where the alien has been removed to another country.  See Steele, 236 F.3d at 134 n.4 ("Though continued custody is normally a requirement for habeas corpus jurisdiction thereafter, *there are exceptions to this rule*." (emphasis added)).

Of course, Carafas, Chong and Steele are distinguishable from the case at hand because the petitioners in those cases actually filed their habeas petitions prior to being

---

[10] Analogously, the Supreme Court and this Court have broadly interpreted the meaning of custody, beyond the colloquial understanding of imprisonment.  See, e.g., Hensley v. Municipal Court, 411 U.S. 345, 349 (1973) (holding that a person released on bail is in custody); Barry v. Bergen County Prob. Dep't, 128 F.3d 152, 162 (3d Cir. 1997) (holding that a community service obligation constituted custody).

14

released from custody.  Based on that distinction, the government argues that the exception alluded to in Steele is a very narrow one carved out only for individuals who actually filed prior to removal.  We do not read these cases quite so narrowly.  Instead, we read them to demonstrate that the phrase "in custody" may be less strictly construed in certain unique circumstances.

The Supreme Court relied on this ability of the judiciary to interpret jurisdictional mandates when it fashioned the "prison mailbox rule" in Houston v. Lack, 487 U.S. 266, 270-74 (1988).  In that case, the Court recognized that the time limit for filing an appeal under Fed. R. Civ. P. 4(a) is a jurisdictional bar.  Id. at 270 (citing Fallen v. United States, 378 U.S. 139, 142 (1964)).  However, the mere existence of a jurisdictional bar did not end the inquiry; the Court went on to analyze whether the jurisdictional bar was intended to preclude jurisdiction in the unique situation of prisoners seeking to file *pro se* appeals from prison.  The Court found that Congress left room for interpretation:

> The statute thus does not define when a notice of appeal has been "filed" or designate the person with whom it must be filed, and nothing in the statute suggests that, in the unique circumstances of a *pro se* prisoner, it would be inappropriate to conclude that a notice of appeal is "filed" within the meaning of [the statute] at the moment it is delivered to prison officials for forwarding to the clerk of the district court.

Id. at 272.  The Court stated that without clear congressional intent to preclude this interpretation of the word "filing," "the *policy grounds* for the general rule making receipt the moment of filing suggests that delivery to prison authorities should instead be the moment of filing *in this particular context*."  Id. at 275 (emphasis added).

15

The government points out that the prison mailbox rule does not represent an exercise in equity, but rather a legal fiction created to deal with very specific policy concerns. The government thus argues that Houston and its progeny should have no impact on our analysis of the District Court's holding in this case. We disagree. Houston at least stands for the proposition that the mere existence of a jurisdictional prerequisite does not necessarily end a court's inquiry. Where the applicable statute and its legislative history do not specifically address how litigants may fulfill the jurisdictional prerequisites in unusual circumstances, courts are left with the task of interpreting and applying the congressional mandate. Therefore, as demonstrated in Houston, the Judiciary may, in certain unique situations, deem a jurisdictional requirement to have been met in specific contexts where strong policy concerns weigh in favor of doing so.

The same can be said of this Court's decision in Marrero. The government criticizes the District Court's citation of Marrero in support of using an equitable remedy to cure a jurisdictional defect because:

> Marrero is not a case where this Court exercised equitable jurisdiction. Rather, the Court interpreted the provisions of now-repealed 8 U.S.C. § 1105a(c), and concluded simply that an alien has not "departed" the United States if he leaves the country as a result of a deportation order whose issuance is tainted by a "colorable" due process violation occurring during administrative deportation proceedings.

Reply Brief for Appellants at 32-33. While this argument disputes the District Court's use of an equitable remedy, it actually helps make a case for the District Court's ability to consider practical realities and due process concerns in determining how to interpret a

16

jurisdictional mandate when presented with unique situations.

Carafas was the first case to recognize courts' ability to interpret § 2241(c)'s custody requirement when presented with unique situations given the lack of clear congressional guidance on what it means to be "in custody." Moreover, in the 37 years since the Supreme Court's decision in Carafas, Congress has declined to give a more specific definition of custody. Thus, although § 2241(c) precludes habeas jurisdiction where actual or constructive custody cannot be found, Congress has not taken away the courts' ability to consider practical realities in determining whether a habeas petitioner can be constructively in custody notwithstanding his release from government detention. See Carafas, 391 U.S. at 239 ("There is no need in the statute, the Constitution, or sound jurisprudence for denying to petitioner his ultimate day in court.").

Because interpreting "custody" to include Petitioner's situation does not override the expressed will of Congress, we uphold the exercise of jurisdiction over this particular habeas petition. Where policy considerations implicated by a unique situation dictate a broad interpretation of a jurisdictional mandate, courts may apply a broad interpretation so long as it is not precluded by congressional intent. Houston, 487 U.S. at 274-75. We are certainly presented with a unique situation in this case. First, it is without question that Petitioner was denied the ability to seek a § 212(c) waiver based on the agency's error of law. It is also without dispute that, because of the egregious behavior of his counsel, Petitioner has been unable to have that error reviewed through no fault of his

17

own.[11]

The concern for preserving the ability to review clearly improper agency errors is at the heart of this Court's decision in Marrero. In that case, we recognized that forcible removal pursuant to an unlawful removal order should not result in the loss of judicial review that the alien would otherwise have. We thus interpreted the language of 8 U.S.C. § 1105a(c) (repealed) (divesting the courts of jurisdiction to review deportation orders after an alien has departed the United States) to allow for jurisdiction in particular cases where the alien's forcible departure implicated due process concerns.

Moreover, as Petitioner points out, many of the same the policy concerns relied on to fashion the prison mailbox rule in Houston apply to justify a broad interpretation of the word "custody" in this case. In Houston, the Court relied in large part on the inability of prisoners to control the method of filing papers and the fact that their only option is to entrust prison officials with their filings. Id. at 270-71. The Court stated:

> Such prisoners cannot take the steps other litigants can take to monitor the
> processing of their notices of appeal and to ensure that the court clerk
> receives and stamps their notices of appeal before the 30-day deadline.
> Unlike other litigants, pro se prisoners cannot personally travel to the
> courthouse to see that the notice is stamped "filed" or to establish the date
> on which the court received the notice. . . . [I]f other litigants do choose to
> use the mail, they can at least place the notice directly into the hands of the

---

[11] We recognize that the agency did not expedite removal in this case in order to prevent Gutierrez from filing his habeas petition and that the government was in no way responsible for Petitioner's failure to file a habeas petition prior to his removal date. Nevertheless, it may be important to consider the policy implications of putting the government in a position in which it can prevent collateral review of improper decisions by expediting the execution of removal orders.

United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it.

Id. at 270-71. In this case, when Petitioner was in INS custody, he reasonably entrusted his attorney with the task of filing his habeas petition, and the attorney's affirmative misrepresentations to Petitioner took away his ability to avail himself of the few alternatives he may otherwise have had.

Finally, it is important to keep in mind that this case involves a petitioner who was actually in INS custody based on an error of law by the agency. Like the petitioners in Chong and Steele, Petitioner in this case was actually detained in INS custody and tried to avail himself of the District Court's habeas jurisdiction at a time when there was no question that he would have met the custody requirement. Moreover, like Chong and Steele, he was no longer in custody by the time the District Court actually considered his petition due to circumstances that were beyond his control. In those cases, this Court related the aliens' habeas petitions back to a time when they were actually in custody notwithstanding the fact that current custody is normally required under § 2241(c).

We emphasize the extreme circumstances presented by this case and note that our narrow holding should not be construed as an invitation to circumvent the § 2241(c) custody requirement in all cases where a petitioner was formerly in custody and simply failed to file a habeas petition before his or her release. Our holding here is limited to the

19

facts of this case. We merely interpret the phrase "in custody" to allow habeas petitions where the petitioner was unquestionably in custody at a time when he actually requested filing, but was effectively prevented from doing so by his counsel's affirmative misrepresentations.[12]

We find that, because the language of § 2241(c) does not preclude an interpretation of custody that would give the District Court jurisdiction over Petitioner's case, and because multiple strong policy concerns weigh in favor of finding custody in this unique situation, Petitioner meets the "in custody" requirement for habeas jurisdiction. Cf. Carafas, 391 U.S. at 239 ("Petitioner is entitled to consideration of his application for relief on the merits. He is suffering, and will continue to suffer, serious disabilities because of the law's complexities and not because of his fault . . . . There is no need in the statute, the Constitution, or sound jurisprudence for denying to petitioner his ultimate day in court."). Therefore, for reasons other than those expressed by the District Court, we approve its Order of October 31, 2003.

5.      *Whether the District Court Erred in Considering Petitioner's Rule 52(b) and Rule 59(e) Motion*

The government argues in the alternative that the District Court should not have considered Petitioner's Motion to Reconsider, as it represents an attempt by Petitioner to

---

[12] The Ninth Circuit similarly allowed for a broad interpretation of "in custody" when it stated that "under extreme circumstances . . . the district court [has] habeas corpus jurisdiction over an immigrant who had already been removed." Miranda v. Reno, 238 F.3d 1156, 1158 (9th Cir. 2001) (citing Singh v. Waters, 87 F.3d 346, 349 (9th Cir. 1996)).

get a "second bite at the apple." The government contends that motions to reconsider under Rules 52(b) and 59(e) should not be entertained unless the new evidence is previously undiscovered by the parties. Therefore, because the evidence regarding the deplorable actions of Petitioner's attorney was available to Petitioner prior to the District Court's November 25, 2002, Order, the government argues that the motion in this case should not have been granted.

Rule 52(b) allows a court to "amend its findings or make additional findings and . . . amend the judgment accordingly." The purpose of this motion is to allow a court to "correct manifest errors of law or fact, or in limited circumstances, to present newly discovered evidence." See Soberman v. Groff Studios Corp., No. 99-1005, 2000 WL 1253211, at *1 (S.D.N.Y. Sept. 5, 2000) (citations omitted). Rule 59(e) permits motions to amend or alter a judgment and may be granted to submit new, previously undiscovered evidence *or* to correct a clear error of law or prevent manifest injustice. See North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). As noted above, we review the grant of motions to reconsider under these rules for abuse of discretion. This Court therefore gives broad deference to the District Court in determining whether reconsideration is warranted.

In this case, the government may be correct to point out that the evidence presented in support of Petitioner's Motion for Reconsideration was known to Petitioner

21

prior to the entry of the November 25, 2002, Order. As such, had the District Court granted reconsideration solely to consider "newly discovered evidence," we may have found error. However, the District Court based its grant of the Motion to Reconsider on the need "to prevent manifest injustice," Gutierrez, 289 F. Supp. at 568, and to correct the "factually incorrect assumption by [the District] Court that the Petitioner had made a decision through his counsel not to file a habeas petition while Petitioner was in INS custody and before deportation," id. at 559. The need to prevent injustice and to correct errors on the record provides an independent basis for granting a motion under Rule 52(b) and 59(e), aside from the presence of previously undiscovered evidence. Therefore, the District Court did not abuse its discretion by entertaining Petitioner's Motion to Reconsider.

For the foregoing reasons, we affirm the grant of writ of habeas corpus.

B.    Petitioner's Cross-Appeal of the November 25, 2002, Order

Petitioner filed a cross-appeal in this action, challenging the District Court's November 25, 2002, decision that Petitioner was no longer "in custody" for the purposes of satisfying § 2241(c)'s jurisdictional requirements once he was deported to Colombia. Because we affirm the District Court's October 31, 2003, grant of habeas relief, Petitioner's cross-appeal of the November 25, 2002, Order is rendered moot. We therefore dismiss the cross-appeal and decline to reach the issue of post-removal

22

custody.[13]

C.    The Petition for Review

Finally, because we affirm the District Court's grant of habeas corpus relief, we dismiss Gutierrez's Petition for Review of the BIA's decision denying his Motion to Reopen administrative proceedings as moot.

---

[13] Moreover, it is not entirely clear that we have the power to review the District Court's November 25, 2002, Order, as it was vacated in whole by the subsequent Order issued on October 31, 2003. Petitioner's Notice of Appeal treated the October 31, 2003, Order as an amendment to the earlier Order. It is clear from the language of the October 31, 2003, Order, however, that the District Court intended to nullify the original order, thus eliminating its effect and probably its appealability. To the extent that the arguments raised in Petitioner's cross-appeal can be viewed as alternative grounds for affirming the District Court's October 31, 2003, Order, those arguments need not be considered here because we affirm the grant of habeas relief on different grounds.

BARRY, Circuit Judge, dissenting.

My difference with the majority is very specific and simply stated:  Gutierrez-Castro was not "in custody" when he filed his habeas corpus petition and, thus, the District Court lacked subject matter jurisdiction.  There can be no compromise when there is no jurisdiction.

The majority recognizes that 28 U.S.C. § 2241(c)'s custody requirement is jurisdictional and concedes, as it must, that Gutierrez-Castro was not in custody when he filed his petition, for he had been removed from the United States eighteen months earlier.  Under the majority's reasoning, however, a court, rather than Congress, can determine whether to relax a jurisdictional requirement based entirely on the court's evaluation of the circumstances of a particular case; indeed, the majority is quite explicit: "the phrase 'in custody' may be less strictly construed in certain unique circumstances." Maj. Op. at 12.  Because of Gutierrez-Castro's "unique situation," and seeking to right what it believes to be a wrong, the majority concludes that "in custody" does not really mean what it says and, thus, that jurisdiction over the petition was not precluded.

I disagree.  In each of the four habeas cases on which the majority relies – Maleng v. Cook, 490 U.S. 488 (1989); Carafas v. La Vallee, 391 U.S. 234 (1968); Chong v. INS, 264 F.3d 378 (3d Cir. 2001); and Steele v. Blackman, 236 F.3d 130 (3d Cir. 2001) – the petitioner was in custody <u>when</u> <u>he</u> <u>filed</u> <u>his</u> <u>petition</u>,[14] as he had to be.  The issue in each

[14]A fifth case on which the majority relies, Marrero v. INS, 990 F.2d 772 (3d Cir. 1993), was not a habeas case and, thus, the "in custody" jurisdictional requirement was

24

of those cases was whether federal jurisdiction was later terminated by the expiration of the petitioner's sentence or his removal from the United States, not, as here, whether the petitioner was – or had to be – in custody in the first instance.  This issue is free from doubt. "The federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed.  This is required not only by the repeated references in the statute, but also by the history of the great writ."  Carafas, 391 U.S. at 238 (notes omitted).

All the majority is left with, then, is the "prison mailbox rule," which afforded relief in Houston v. Lack, 487 U.S. 266 (1988).  The statute at issue there, 28 U.S.C. § 2107, did not define when a notice of appeal has been filed and, in the context of pro se prisoner appeals, the answer to that question was far from clear.  Interpretation of the word "filing" in that context was, therefore, required, with the Court finding nothing in the statute to suggest that "in the unique circumstances of a pro se prisoner," it would be inappropriate to find that the notice of appeal is filed when it is delivered to prison officials.  Houston, 487 U.S. at 272.

The critical difference here is that there is no necessity to interpret the "in custody" requirement of § 2241(c).  Congress expressed its intent in the clearest possible terms and courts, virtually without exception, have, in turn, required that there be custody at the time of filing for there to be jurisdiction.  That express will of Congress simply cannot be

not at issue.

25

ignored, even if the circumstances of a particular case are unique and good men seek to do rough justice.

I respectfully dissent.[15]

---

[15]I would, therefore, reverse the judgment in No. 03-4798. I would also dismiss the cross-appeal because it was taken from an order that had been vacated and dismiss the petition for review for lack of jurisdiction.