**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-7028

YEISON LEON ORTIZ,

Petitioner - Appellant,

v.

ALEJANDRO N. MAYORKAS, Secretary of the Department of Homeland Security; MATTHEW T. ALBENCE, Acting Director of Immigration and Customs Enforcement; HENRY LUCERO, Executive Associate Direction, Enforcement and Removal; FRANCISCO MADRIGAL, Baltimore Field Office Director; JACK KAVANAGH, Director of Howard County Detention Center,

Respondents - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Ellen L. Hollander, Senior District Judge. (1:20-cv-01222-ELH)

Argued: December 9, 2021                    Decided: February 28, 2022

Before GREGORY, Chief Judge, NIEMEYER, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion. Chief Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

**ARGUED:** Timothy William Davis, LAW OFFICE OF TIMOTHY W. DAVIS, LLC, Baltimore, Maryland, for Appellant. Nicole Patrice Grant, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Jeffrey Bossert Clark, Acting Assistant Attorney General, William C. Peachey, Director, William C. Silvis, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

Yeison Leon Ortiz entered the United States as a minor, and though he was later ordered removable, he remained in the U.S and was ordered removed *in absentia*. Several years later, Ortiz was arrested for criminal charges and detained by U.S. Immigration and Customs Enforcement ("ICE"). Though the Immigration Judge ("IJ") signed a stay-of-removal order minutes before his deportation, neither party received notice until a few days after Ortiz was deported. Over a month after he was deported, Ortiz filed a habeas corpus petition asking the district court to compel the Department of Homeland Security ("DHS") to return him to the U.S. on grounds that he was wrongfully removed. The district court denied his petition holding that it lacked subject matter jurisdiction because Ortiz was no longer "in custody" at the time he filed his petition. Ortiz now appeals to this court.

Because we find that Ortiz was plainly not "in custody" at the time he filed his habeas petition, the district court's ruling is affirmed.

I.

On December 13, 2013, Ortiz, a native of Honduras, was arrested upon entering the U.S. southern border. J.A. 68. On December 14, 2013, DHS initiated removal proceedings against Ortiz, charging him as removable pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). J.A. 51, 68, 70. On February 3, 2015, Ortiz was ordered removed *in absentia* after he failed to appear for a scheduled removal proceeding. J.A. 51. Ortiz remained in the U.S. for nearly seven years.

2

On January 7, 2020, Ortiz was arrested in Montgomery County, Maryland for kidnapping, armed robbery, and first-degree assault. J.A. 68. On the same date, the ICE Pacific Enforcement Response Center identified Ortiz as removable and issued a detainer. J.A. 68, 142–43. On March 6, 2020, the Circuit Court for Montgomery County dismissed the original criminal charges against Ortiz, and instead, charged him with one count of second-degree assault. J.A. 69, 143. On March 10, 2020, Ortiz pled guilty to second-degree assault, and he was sentenced to 364 days suspended and 364 days supervised release. J.A. 51, 69, 75. On March 10, 2020, ICE detained Ortiz, and, on March 20, 2020, he was interviewed by the Consulate of Honduras in Washington, D.C., which issued a travel document for his removal. J.A. 69.

On March 30, 2020, ICE transferred Ortiz to a detention center in Alexandria, Louisiana, and he was scheduled for removal on April 1, 2020, at 11:10 A.M. EST. J.A. 51–52, 69. Ortiz was scheduled to arrive at 1:00 P.M. EST in Honduras. J.A. 52, 69, 78, 89. On April 1, 2020, at 9:19 A.M. CST (10:19 A.M. EST), Ortiz, through counsel, filed an emergency motion to stay removal and a motion to reopen and rescind his *in-absentia* removal order in immigration court in Baltimore, Maryland. J.A. 79–83. Less than an hour later, at 10:08 A.M. CST (11:08 A.M. EST), the IJ granted the stay motion, pending disposition of Ortiz's motion to reopen. J.A. 95. However, the IJ did not immediately notify Ortiz or DHS. Instead, the IJ placed the signed stay order in her outgoing mail. J.A. 133. At 11:10 A.M. EST, and two minutes after the stay order was granted, Ortiz was deported back to Honduras as scheduled. Later that day, between 1:00 P.M. and 2:00 P.M. EST, Ortiz's counsel called the Baltimore Immigration Court and inquired about the stay

3

and was informed that the motion was still pending. J.A. 133. Two days later, on April 3, 2020, DHS received the IJ's signed stay order, and Ortiz's counsel received the order on April 4, 2020. J.A. 69, 133.

On April 15, 2020, the IJ also granted Ortiz's motion to reopen. J.A. 96. On April 20, 2020, counsel submitted a written request to the ICE Office of the Principal Legal Advisor in Baltimore requesting that they return Ortiz to the U.S. based on the allegation that DHS violated the IJ's stay order and because the IJ granted the motion to reopen. J.A. 96. On April 27, 2020, at a status hearing, ICE stated that they would not return Ortiz and that they would be filing a motion to dismiss Ortiz's removal proceedings because Ortiz was no longer in the U.S. J.A. 96. At the hearing, counsel did not dispute that Ortiz was no longer in the U.S. On April 28, 2020, DHS filed a Motion to Dismiss Or In The Alternative A Motion to Reconsider the Stay of Removal and the Motion to Reopen. J.A. 95.

On May 11, 2020, and over a month after Ortiz was deported, counsel filed a habeas corpus petition in the U.S. District Court for the District of Maryland, requesting that DHS return Ortiz to the U.S. on grounds that he was unlawfully removed in violation of the IJ's stay order. On May 12, 2020, counsel also filed a motion for administrative closure in the Baltimore Immigration Court pending resolution of Ortiz's federal court habeas corpus action. J.A. 5–30, 70–76. On May 27, 2020, the IJ denied Ortiz's motion for administrative closure and granted the government's motion to dismiss on the ground that Ortiz was no longer in the U.S. J.A. at 95–101. On June 25, 2020, Ortiz timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). To date, Ortiz's BIA appeal remains pending.

4

On June 7, 2020, the district court granted the government's motion to dismiss Ortiz's habeas corpus petition based on lack of subject matter jurisdiction. J.A. 141–54. On July 10, 2020, Ortiz appealed the district court's dismissal of his habeas petition to this court. J.A. 155.

## II.

We have jurisdiction to consider this appeal from the district court pursuant to 28 U.S.C. § 1291. We review *de novo* a district court's dismissal of the habeas petition based on lack of subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991); *see also Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989). When a Rule 12(b)(1) challenge is raised, the burden of proving subject matter jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Accordingly, we "review the district court's factual findings with respect to jurisdiction for clear error and the legal conclusion that flows therefrom de novo." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

## III.

### A.

The key issue here is whether the district court erred by dismissing Ortiz's habeas corpus action for lack of subject matter jurisdiction. We find that the district court did not err.

The term "in custody" in 28 U.S.C. § 2241(c) has been interpreted as a jurisdictional requirement that either grants or divests a federal court of its authority to grant habeas relief. *See Carafas v. LaVallee*, 88 S. Ct. 1556, 1560 (1968); *Jones v. Cunningham*, 83 S. Ct. 373, 374 (1963); *see also United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969), *cert. denied*, 90 S. Ct. 244 (1969) (holding that "[t]he relevant phrase in Section 2241, 'within their respective jurisdictions,' limits the power of a district court to hear and determine a prisoner's petition for habeas corpus to those situations where the prisoner both is physically present in the court's territorial jurisdiction and is detained or held in custody within that jurisdiction") (quoting *Ahrens v. Clark*, 68 S. Ct. 1443, 1445 (1948)).

The Supreme Court has made it clear that the "in custody" determination is made at the time the habeas petition is filed. *Spencer v. Kemna*, 118 S. Ct. 978, 983 (1998) (citing *Carafas*, 88 S. Ct. at 1559); *see also Smith v. Ashcroft*, 295 F.3d 425 (4th Cir. 2002) (holding the same). The Supreme Court has also interpreted "in custody" liberally to mean instances where there is a "restraint [] on a [person's] liberty . . . not shared by the public generally." *Cunningham*, 83 S. Ct. 373 at 376 (internal quotation marks omitted). Thus, a petitioner does not have to be "physically detained to pursue habeas relief." *Maleng v. Cook*, 109 S. Ct. 1923, 1926 (1989) (per curiam). Noncitizens challenging their detention and deportation may also petition for a writ of habeas corpus. *See* 28 U.S.C. § 1252(e)(2);

*see also INS v. St. Cyr*, 121 S. Ct. 2271, 2278–80 (2001) (reviewing a noncitizen's habeas challenge).[1]

Accordingly, a noncitizen petitioner subject to final removal proceedings is "'in custody' for habeas purposes, whether or not he is detained." *Simmonds v. INS*, 326 F.3d 351, 356 (2d Cir. 2003); *see also Mustata v. U.S. Dep't of Justice*, 179 F.3d 1017, 1021 n.4 (6th Cir. 1999) (holding a final deportation order places an alien constructively "in custody" because of "the specialized meaning those words have in the context of an immigration-related habeas petition."); *Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir. 1995) (holding the same); *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001) (same).

However, as several sister circuits have held, a petitioner who has already been removed from the U.S. is no longer "in custody" for purposes of habeas corpus jurisdiction. *See, e.g.*, *Kumarasamy v. Att'y Gen. of U.S.*, 453 F.3d 169, 173 (3d Cir. 2006), *as amended* (Aug. 4, 2006) (holding that "because Kumarasamy had already been removed from the country when he filed his habeas petition, the District Court lacked jurisdiction to consider it"); *Miranda v. Reno*, 238 F.3d 1156, 1159 (9th Cir. 2001) (finding that the "extreme circumstances" exception does not apply in a case where a noncitizen has been removed

---

[1] *See also Ashcroft*, 295 F.3d at 428 (holding that the noncitizen petitioner "needed only to be 'in custody' at the time the petition was filed to avoid a jurisdictional challenge based on the 'in custody' requirements of the habeas statute" (citing *Carafas*, 88 S. Ct. at 1560 (holding that where the petitioner was in custody at the time the petition was filed, his release from prison before the petition for certiorari was filed did not moot the case because petitioner could still suffer "serious disabilities because of the law's complexities and not because of his fault, if his claim that he has been illegally convicted is meritorious")).

from the country because the noncitizen is not in custody as he or she is "not subject to restraints not shared by the public generally that significantly confine and restrain his freedom"); *Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1263 (11th Cir. 2003) (holding that the district court lacked jurisdiction because petitioner filed his habeas action after having been deported to India).

B.

As detailed above, there is no factual dispute that Ortiz filed his habeas corpus petition claim on May 11, 2020, which was more than a month after he had been deported to Honduras on April 1, 2020. Thus, Ortiz was not "in custody" at the time he filed his habeas corpus petition.

Still, Ortiz argues that the district court retains habeas corpus jurisdiction in "extreme circumstances" where a noncitizen was already deported in violation of an IJ stay order. Opening Br. at 10. The "extreme circumstances" exception was first articulated in *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996), in which the Ninth Circuit conducted a totality-of-the-circumstances inquiry of Singh's deportation proceedings and found that the district court retained habeas jurisdiction because Singh never received notice of his removal order, was denied access to his immigration file, and, critically, because the Government removed him unlawfully in violation of a stay order.[2] Since *Singh*, several

---

[2] The Ninth Circuit has reaffirmed the "extreme circumstances" exception to a lack of jurisdiction in several subsequent cases. *See, e.g.*, *Rivera v. Ashcroft*, 394 F.3d 1129, 1138–40 (9th Cir. 2005) (finding extreme circumstances because petitioner plausibly claimed that he was a United States citizen, and the IJ failed to investigate the veracity of

(Continued)

8

sister circuits have recognized the "extreme circumstances" exception in evaluating whether a district court retains jurisdiction over a noncitizen's habeas petition.[3]

While we do not rule out the possibility that a district court could use the "extreme circumstances" exception to retain habeas jurisdiction, we also do not need to decide whether to adopt the "extreme circumstances" exception at this time because Ortiz was plainly no longer "in custody" at the time that he filed his habeas petition. There is no dispute that, on April 1, 2020, the IJ granted Ortiz's motion to stay his removal pending his motion to reopen, and the IJ did not immediately notify ICE. Both parties agree that

his citizenship); *Carrillo v. Ashcroft*, 111 F. App'x 532, 533–34 (9th Cir. 2004) (finding extreme circumstances because petitioner asserted that the government failed to notify him before deportation that an IJ denied his motion to rescind a removal order); *cf. Miranda v. Reno*, 238 F.3d 1156, 1159 (9th Cir. 2001) (finding no extreme circumstances because petitioner was removed pursuant to an IJ's order after a hearing at which he was represented by counsel, and he was not subject to restraints "not shared by the public generally that significantly confine and restrain his freedom").

[3] *See, e.g.*, *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 120 (D.D.C. 2006), *aff'd*, 279 F. App'x. 9 (D.C. Cir. 2008) (holding extreme circumstances existed where "the INS removed an immigrant 'in violation of the [IJ's] order'"); *Kumarasamy*, 453 F.3d at 173 (3d Cir. 2006) (declining to "rule out the possibility that a district court could potentially exercise jurisdiction in a situation where exceptional circumstances would otherwise effect a miscarriage of justice"); *Gutierrez v. Gonzales*, 125 F. App'x 406, 409, 416 (3rd Cir. 2005) (finding extreme circumstances where petitioner was in custody based on an error committed by the relevant agency, he asked his attorney to appeal the erroneous decision, and the attorney failed to file a habeas petition despite affirmative representations that he had done so); *Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011) (denying § 2241 relief because petitioner failed to show extreme circumstances); *Patel v. Ashcroft*, 378 F.3d 610, 613 (7th Cir. 2004) ("[W]e doubt that Congress meant to empower the immigration authorities to thwart judicial review by removing the alien from the United States in conscious contempt of a judicial decree. But there was no willfulness on the part of the government in this case[.] [O]n the contrary, the violation of the stay was technical and inadvertent, the stay having been issued too late to be communicated to the airline in time to stop the departure. Patel should not be allowed to gain a procedural advantage from the action of her lawyer in dawdling about seeking a stay of the original removal order.").

neither the government nor Ortiz's counsel knew that the IJ granted the motion to stay his removal two-minutes before he was scheduled for removal on April 1, 2020, at 11:10 A.M. EST.

Moreover, and unlike in *Singh*, Ortiz had received notice of his removability on December 14, 2013, and, on February 3, 2015, he was ordered removed *in absentia* after failing to appear at his removal proceedings. J.A. 51, 68, 71–72. According to Ortiz, he failed to appear because he was a minor at the time (16 years of age), and his mother suffered a stroke in December of 2013 "which hampered her efforts to manage [Ortiz's] immigration case and find [Ortiz] legal help in 2014 and 2015. "By the time [Ortiz] found legal assistance when he was an adult, he already had a removal order and he was told there was nothing that could be done." J.A. 80–81. Nevertheless, and unlike in *Singh*, Ortiz was aware of his immigration status and had years to correct it but did not do so. Then, he filed his habeas petition a month after he was deported.

C.

The district court alternatively relied on 8 U.S.C § 1252(g) to find that it lacked jurisdiction.[4] Given that the district court properly concluded that it lacked jurisdiction

_____

[4] Ortiz also argues that the federal stay regulations, 8 C.F.R. §§ 241.6(c) and 1241.6(c), are arbitrary and capricious because the regulations are out of sync with the current ICE Air operations which "enable ICE to 'take all reasonable steps to comply with a stay' even after normal boarding procedures have been completed." Opening Br. at 21. Ortiz maintains that the government violated the Administrative Procedure Act and his Fifth Amendment right to due process by unlawfully removing him in violation of the stay order and refusing to return him to the U.S. *Id.* at 22–25. The district court appropriately did not need to consider this argument because it lacked jurisdiction. Therefore, we also need not consider this argument.

under 28 U.S.C. § 2241(c), we do not need to reach this alternative ground for dismissal. *See Helvering v. Gowran*, 58 S. Ct. 154, 158 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."); *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978) (same).

IV.

Because Ortiz was plainly not "in custody" at the time he filed his habeas corpus petition, the district court's judgment is

AFFIRMED.